## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED FOOD AND COMMERCIAL WORKERS UNION, et al., | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | No. CIV-09-1114-D |
| CHESAPEAKE ENERGY CORPORATION, et al., | ) ) ) | |
| Defendants. | ) ) | |

## ORDER

Before the Court is the Motion to Dismiss [Doc. No. 30] filed jointly by Chesapeake Energy Corporation ("Chesapeake"), Aubrey K. McClendon, Marcus C. Rowland, Michael A. Johnson, Richard K. Davison, Frank A. Keating, Breene M. Kerr, Charles T. Maxwell, Merrill A. Miller, Jr., Donald L. Nickles, and Frederick B. Whittemore (collectively, the "Individual Defendants").[1] Also before the Court is the separate Motion to Dismiss [Doc. No. 27] filed jointly by UBS Investment Bank, ABN Amro, Banc of America Securities LLC, and Wells Fargo Securities (the "Underwriter Defendants"). Because the Underwriter Defendants adopt and incorporate the arguments of Chesapeake and the Individual Defendants, the two motions are considered collectively, and the movants are identified as "Defendants."[2] Plaintiff timely responded to the motions, and Defendants filed reply briefs; pursuant to Court authorization, the parties also filed supplemental briefs.[3]

---

[1]Chesapeake and the Individual Defendants have also filed a motion to strike certain portions of the Amended Complaint. That motion [Doc. No. 32] will be addressed in a separate order.

[2]The Underwriter Defendants' motion asserts an additional argument that the Amended Complaint fails to allege sufficiently specific facts regarding the role of each Underwriter Defendant in the transactions on which liability is premised. That argument is also addressed in this Order.

[3]Defendants also filed a motion asking the Court to hear oral argument on the motions, and Plaintiff did not object. The Court has determined that oral argument is not necessary, and the motion [Doc. No. 69] is denied.

Defendants seek dismissal pursuant to Fed. R. Civ. P. 12(b)(6), arguing that the Amended Complaint fails to state a claim upon which relief may be granted. Although the Court does not typically examine material outside the scope of the complaint when considering a Rule 12(b)(6) motion, the movants ask the Court to take judicial notice of certain Securities and Exchange Commission ("SEC") filings and related materials which were referenced in the Amended Complaint but not submitted as exhibits thereto. Plaintiff does not object to that request and, in fact, also references these documents in its response to the motion. Accordingly, the Court finds these materials are properly considered in connection with the motion.[4]

Background:

Plaintiff United Food and Commercial Workers Union has been designated the lead Plaintiff in this purported class action suit alleging that Defendants violated the Securities Act of 1933 in connection with a July 9, 2008 public offering of 25 million shares of Chesapeake common stock.[5] Specifically, Plaintiff alleges Defendants violated §§11 and 12(a)(2) of the Securities Act, 15 U. S. C. §§77k(a) and 77*l*(a)(2), by misstating and omitting from the registration statement and prospectus certain material facts, thereby rendering the statement misleading to potential investors. Plaintiff also asserts a § 15 claim against the Individual Defendants, seeking to hold them liable for the misstatements and omissions based on their status as "control persons" under the provisions of § 15.

---

[4] When considering a Rule 12(b)(6) motion, a court may, in some instances, examine material outside the pleadings. Specifically, the Court may review material submitted as an exhibit to or incorporated or referenced in the complaint; documents relied upon by a plaintiff as an integral basis for his claims may also be considered. *Tal v. Hogan,* 453 F.3d 1244, 1265 n. 24 (10th Cir. 2006) (citing *Indus. Constructors Corp. v. United States Bureau of Reclamation*, 15 F.3d 963, 964-65 (10th Cir.1994)). Where documents are central to a plaintiff's claims, they may be properly considered in a motion to dismiss, and conversion to summary judgment is not required. *Pace v. Swerdlow,* 519 F. 3d 1067, 1072 (10th Cir. 2008). Furthermore, a court may take judicial notice of the contents of SEC filings which are a matter of public record. *See, e.g., In re Morgan Stanley Information Fund Securities Litigation*, 592 F. 3d 347, 355 n. 5 (2d Cir. 2010).

[5] This action was originally filed in the United States District Court for the Southern District of New York; upon Defendants' motion, the case was transferred here. Prior to the transfer, United Food and Commercial Workers Union was appointed lead counsel.

2

The offering at issue was a secondary offering in which a December 8, 2005 registration statement was updated by a current prospectus supplement. In accordance with applicable securities regulations, the supplement incorporated a series of other SEC filings made by Chesapeake through July 9, 2008 and, consistent with the SEC regulations, the incorporated documents became part of the registration statement, effective on July 9, 2008.

The factual allegations underlying Plaintiff's claim that material facts were misstated and omitted are set out in detail in the eighteen-page Amended Complaint. Stated in general terms, Plaintiff identifies three categories of allegedly misstated and omitted material facts: First, Defendants failed to properly disclose the "true risk and uncertainties" concerning the approximately 29 million shares of Chesapeake common stock held by Chesapeake Chief Executive Officer Aubrey McClendon ("McClendon"), a substantial portion of which was held in margin accounts; Plaintiff alleges Defendants failed to disclose that McClendon lacked the financial resources necessary to satisfy his margin loans. *See* Amended Complaint, ¶¶ 34-37. Second, Plaintiff contends Defendants failed to properly disclose that Lehman Brothers ("Lehman") was the "counterparty to a material portion of the contracts hedging Chesapeake's oil and natural gas production"; the hedging contracts created a potential significant financial obligation for Lehman, and it was experiencing serious financial difficulties at the time of the July 9, 2008 offering, thus creating a risk that it would be unable to perform its contractual obligations to Chesapeake. Amended Complaint, ¶¶ 38-51. Finally, Plaintiff alleges Defendants failed to disclose that many of Chesapeake's hedging contracts contained a "kick-out" provision whereby the counterparty's exposure is "kicked out" if the price of natural gas falls below the price specified in the contract. Plaintiff contends that, although Defendants disclosed the existence of hedging contracts, they failed to include sufficient detail to

permit investors to evaluate the possible risks associated with those contracts and the "kickout" provisions. Amended Complaint, ¶¶ 52-55.

Plaintiff alleges that the foregoing constitute misstatements and omissions of material fact in that the information was important to a potential investor's evaluation of the risks associated with the purchase of Chesapeake stock and the decision whether to purchase the same. Plaintiff further contends Defendants were aware of the facts and had a duty to disclose them. As set out in the Amended Complaint, in October of 2008, McClendon was required to sell his Chesapeake stock because he was unable to satisfy margin calls. Furthermore, Lehman's financial collapse rendered it unable to satisfy its hedging contract obligations to Chesapeake, thereby causing a decline in the value of Chesapeake's gas contracts. Additionally, Plaintiff contends the kick-out provisions in other hedging contracts resulted in Chesapeake receiving unfavorable gas prices and contributed to the decline in the value of Chesapeake stock.

Defendants argue the Amended Complaint fails to state a plausible claim for relief based on violations of § § 11 or 12 (a)(2)[6] because the omissions on which Plaintiff relies could not constitute a violation of either statutory provision. They argue that Plaintiff's claims are based on hindsight, and the facts they contend were omitted could not have been known or predicted at the time of the July 9, 2008 offering and prospectus. Defendants further argue that, in any event, the registration statement and related material include disclosures regarding McClendon's margin accounts, the existence of hedging contracts, and the terms of those contracts. They contend all

---

[6]The Individual Defendants' liability under § 15 is dependent on Plaintiff's ability to demonstrate primary liability under §§ 11 and 12(a)(2). *In re Morgan Stanley Information Fund Securities Litigation*, 592 F. 3d 347, 358 (2d Cir. 2010); *Maher v. Durango Metals, Inc.*, 144 F. 3d 1302, 1305 (10th Cir. 1998). In this case, the Individual Defendants argue the § 15 claim must be dismissed because Plaintiff cannot state a claim for relief under §§ 11 or 12(a)(2). As discussed, *infra*, they also argue that Plaintiff fails to allege sufficient facts to establish their liability as statutory sellers.

4

material facts were properly disclosed at the relevant time, and they had no statutory duty to make further disclosures.

In addition to the foregoing arguments, the Underwriter Defendants contend that Plaintiff's § 12(a)(2) claim must be dismissed as to them because Plaintiff fails to allege with sufficient specificity that it purchased the securities from, or was solicited by, any one of the Underwriter Defendants.

Standards governing Rule 12(b)(6) motions:

To avoid dismissal pursuant to Rule 12(b)(6), a complaint "must contain enough factual allegations 'to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *Robbins v. Oklahoma*, 519 F. 3d 1242, 1247 (10th Cir. 2008).

To state a plausible claim, the Plaintiff has the burden to frame a "complaint with enough factual matter (taken as true) to suggest" that he or she is entitled to relief. *Robbins*, 519 F. 3d at 1247. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U. S. at 555. Thus, plaintiffs must allege sufficient facts to "nudge[ ] their claims across the line from conceivable to plausible." *Id.* at 570; *Robbins*, 519 F. 3d at 1247. The "mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F. 3d 1174, 1177 (10th Cir. 2007) (emphasis in original). The Tenth Circuit has explained the plausibility requirement as follows:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

5

*Robbins*, 519 F. 3d at 1247 (quoting *Twombly*, 127 S. Ct. at 1974).

Although the Court must construe well-pleaded facts as true, not all factual allegations are "entitled to the assumption of truth." *Ashcroft v. Iqbal*, __U.S.__, 129 S.Ct. 1937, 1951 (2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id.* The Court need not accept as true the assertions in a complaint which "amount to nothing more than a 'formulaic recitation of the elements'" of a claim. *Ashcroft,* 129 S. Ct. at 1951 (quoting *Twombly*, 550 U.S. at 554-555).

Where a complaint alleges causes of action based on federal securities laws, the requirements of *Twombly* and *Iqbal* must be satisfied. *In re IAC/InterActive Corp. Securities Litigation*, 695 F. Supp. 2d 109, 117 ( S. D. N. Y. 2010). Where a securities claim sounds in fraud, the complaint must also satisfy the heightened pleading standard of Fed. R. Civ. P. 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA"),15 U. S. C. § 78u-4(b)(2), thus requiring a plaintiff to plead fraud with particularity. *In re Thornburg Mortgage, Inc. Securities Litigation,* 695 F. Supp. 2d 1165, 1187 (D. N. M. 2010); *IAC/InterActive*, 695 F. Supp. 2d at 115; *In re Ambac Financial Group, Inc. Securities Litigation*. 693 F. Supp. 2d 241, 274-75 (S. D. N. Y. 2010). Where, however, a claim arising under § 11 or § 12(a)(2) is not premised on fraud, Rule 9(b) scrutiny is not triggered. *Schwartz v. Celestial Seasonings, Inc.*, 124 F. 3d 1246, 1252 (10th Cir. 1997). Nonetheless, the *Twombly* requirements remain applicable, "requiring the Plaintiffs to state non-conclusory facts from which it can plausibly be inferred that the Plaintiffs state a valid claim." *In re Thornburg Mortgage, Inc. Securities Litigation*, 683 F. Supp. 2d 1236, 1255 (D. N. M. 2010) (citing *Robbins*, 519 F. 3d at 1247-49).

Rule 12(b)(6) dismissals of securities claims "are difficult to obtain because the cause of action deals primarily with fact-specific inquiries such as materiality." *In re SemGroup Energy Partners, L. P.,* ___ F. Supp. 2d. ___, 2010 WL 1816434, at *5 (N. D. Okla. April 30, 2010) (unpublished opinion) (citing *Grossman v. Novell, Inc.*, 120 F. 3d 1112, 1118 (10th Cir. 1997)). However, "'courts do not hesitate to dismiss securities claims pursuant to Rule 12(b)(6) where the alleged misstatements or omission'" are "'plainly immaterial.'" *Id.* (quoting *Grossman*, 120 F. 3d at 1118).

Application:

Section 11 of the Securities Act "imposes civil liability on issuers and other signatories of a registration statement if the registration statement contains material misstatements or omissions and the plaintiffs acquired the securities without knowledge of such misrepresentations." *McMahan & Co. v. Wherehouse Entertainment*, 65 F. 3d 1044, 1047 (2d Cir.1995); *Police and Fire Retirement System of City of Detroit v. SafeNet, Inc.*, 645 F.Supp.2d 210, 226 (S.D.N.Y.,2009). Section 11 provides a cause of action by the purchaser of the registered security against "the security's issuer, its underwriter, and certain other statutorily enumerated parties." *In re Morgan Stanley Information Fund Securities Litigation*, 592 F. 3d 347, 358 (2d Cir. 2010).

To state a claim for relief under § 11, a plaintiff must allege (1) he purchased a registered security, either directly from the issuer or in the aftermarket following the offering; (2) the defendants participated in the offering in a manner sufficient to give rise to liability under § 11; and (3) the registration statement "'contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading.'" *Id.* at 358-59 (quoting 15 U. S. C. § 77k(a)).

7

Section 12(a)(2) of the Securities Act provides essentially the same cause of action as § 11, but it applies to alleged material misstatements or omissions in a prospectus rather than in a registration statement. *Morgan Stanley*, 592 F. 3d at 359 (citing 15 U. S. C. § 77*l*(a)(2)). Under § 12(a)(2), potential liability for omissions or misstatements extends to "statutory sellers." *Pinter v. Dahl*, 486 U. S. 622, 643-647 (1988). An individual is a "statutory seller" if he: 1) "passed title, or other interest in the security, to the buyer for value," or (2) "successfully solicit[ed] the purchase, motivated at least in part by a desire to serve his own financial interests or those of the securities' owner." *Id*. at 642, 647. Thus, to state a claim under § 12(a)(2), a plaintiff must plead facts to show 1) the defendant is a "statutory seller" ; 2) the "sale was effectuated by 'means of a prospectus or oral communication'"; and 3) "the prospectus or oral communication 'include[d] an untrue statement of a material fact or omit[ted] to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading.'" *Morgan Stanley*, 592 F. 3d at 359 (quoting 15 U. S. C. § 77*l*(a)(2)).

In their motions Defendants focus primarily on the contention that Plaintiff's allegations fail to show the essential element, common to both claims, that the registration statement and prospectus omitted material facts necessary to insure that the content of those documents was not misleading. Plaintiff does not allege that the defendants intentionally misstated the facts or made fraudulent representations; it expressly states in the Amended Complaint that it alleges neither fraud nor scienter. Instead, the claims are based on the negligent failure to properly disclose facts and/or the failure to ascertain facts that could reasonably have been discovered through the exercise of reasonable diligence. Accordingly, the allegations in the Amended Complaint are not subject to a Rule 9(b) analysis, and the Court's determination is limited to the standards governing Rule 12(b)(6).

To state a claim based on an omission of a material fact "necessary to make the statements therein not misleading," a plaintiff must allege either an affirmative statement made misleading by virtue of an omission or omitted information which the defendant was legally obligated to disclose. *In re Merrill Lynch & Co. Research Reports Sec. Litig.,* 272 F. Supp. 2d 243, 248 ( S. D. N. Y. 2003); 15 U. S. C. § § 77k(a) and 77*l*(a)(2). The omission of information, absent a duty to disclose the same, is not a basis for liability. *Grossman v. Novell, Inc.*, 120 F. 3d 1112, 1124 (10thCir. 1997).

Defendants contend Plaintiff cannot state a plausible claim for relief because no material facts were omitted and the purported omissions cited by Plaintiff are not actionable under the Securities Act. Defendants argue that the alleged omissions involve later events about which they could not have known at the time of the offering and that, as a result, the purported omissions cannot form the basis for a claim under § 11 or § 12(a)(2). According to Defendants, Plaintiff's claims are based on catastrophic economic events which could not have been foreseen at the relevant time, and they contend Plaintiff is improperly seeking to establish liability based on hindsight.

Defendants correctly state that the securities laws do not "provide investors with broad insurance against market losses," and cannot protect investors against unexpected catastrophic losses. *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U. S. 336, 345 (2005). Defendants argue that, in this case, the economic decline occurring after the July 9, 2008 Chesapeake offering could not have been predicted at the time of the offering, and was beyond the scope of Defendants' knowledge or their disclosure obligations under the SEC regulations at the relevant time.

The allegations of the Amended Complaint, however, take a different tack. Plaintiff's allegations do not seek to impose upon Defendants an obligation, viewed in hindsight, to have predicted in July 2008 the subsequent occurrences which resulted in the decline of Chesapeake's stock value. Instead, Plaintiff contends Defendants had knowledge, at the time of the offering, of

9

facts which were material to an investor's assessment of the risks associated with the potential purchase of Chesapeake stock; Plaintiff alleges Defendants failed to fully disclose those facts. Plaintiff contends that, had investors been aware of additional facts known to Defendants but not disclosed to prospective investors, their investment decisions may have been impacted. As discussed, *supra*, the cited omissions fall into three categories–the extent of McClendon's margin holdings and whether he had the financial resources to satisfy possible margin calls, the fact that Lehman was a counterparty to a substantial number of hedging contracts, and the nature and extent of Chesapeake's hedging contracts.

Defendants correctly argue that the documents comprising the offering disclose the fact that McClendon held stock in margin accounts and that Chesapeake had hedging contracts, some of which contained "kickout" provisions. However, Plaintiff contends that, although these facts were generally disclosed, the disclosures should have been more detailed, and Defendants had knowledge of details which were not otherwise available to potential investors. Plaintiff contends that the lack of detail constitute an omission of facts which were material to potential investors, especially given the risks associated with gas prices and the financial condition of Lehman at the time.

An omission of fact is material "if a reasonable investor would consider it important in determining whether to buy or sell stock." *Grossman*, 120 F. 3d at 1199 (citing *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976)). "The standard contemplates 'a showing of a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder.'" *In re: Semgroup Energy Partners,* __ F. Supp. 2d at __, 2010 WL 1816434, at *6 (quoting *TSC*, 426 U.S. at 449). Whether information is material depends on other information available to potential investors and, "unless the statement significantly altered the total mix of information available, it will not be considered material." *TSC*, 426 U.S. at

449. The issue of materiality "may be characterized as a mixed question of law and fact," and the determination "requires delicate assessments of the inferences a 'reasonable shareholder' would draw from a given set of facts and the significance of those inferences to him, and these assessments are peculiarly ones for the trier of fact." *Id.* at 450. Whether the additional disclosures on which Plaintiff relies were material is thus not an issue generally determined in a motion to dismiss.

Whether Plaintiff can prove its allegations of Securities Act violations is not properly before the Court in the motions to dismiss. Instead, the issue presented by Defendants' motions is whether Plaintiff's allegations are sufficient to state a plausible claim for relief under § 11 or § 12(a)(2). Having fully reviewed the Amended Complaint in light of the applicable law, the Court concludes that the allegations are sufficient to state a claim that Defendants failed to disclose material facts. Whether the facts on which Plaintiff relies were known to Defendants at the time of the offering presents a question of fact which must be determined by the evidence.

Furthermore, the extent to which the alleged omissions were material to Plaintiff and other investors is a mixed question of law and fact; dismissal based on a lack of materiality is proper only where the Court concludes that the omissions were "plainly immaterial." *Grossman,* 120 F. 3d at 1118. Plaintiff has alleged sufficient facts to withstand the motions to dismiss on this basis.

Defendants also argue that Plaintiff has failed to allege sufficient facts to show that the losses they incurred were caused by the purported omissions. Defendants concede, however, that § 11 and § 12(a)(2) do not require a plaintiff to plead or prove loss causation. An absence of loss causation is an affirmative defense on which Defendants have the burden; an investor's failure to show loss causation is not "fatal to § § 11 and 12 claims because he does not bear the burden of proof on loss causation vis-a-vis those claims." *See, e.g., Freeland v. Iridium World Communications, Ltd*., 233 F. R. D. 40, 47 (D. D. C. 2006).

The Court agrees with Plaintiff that the balance of Defendants' loss causation argument is beyond the scope of these motions, and extends to evidentiary arguments not properly considered at this stage of the litigation. Accordingly, the Court concludes that Plaintiff's allegations of loss are sufficient to withstand dismissal.

With respect to the § 12(a)(2) claims, Defendants also contend Plaintiff has failed to allege sufficient facts to show that Chesapeake and the Individual Defendants were "sellers" having potential liability under the statute. As Plaintiff notes, however, a seller is "not limited to those who pass title," and it extends to persons who successfully solicit a purchase motivated "at least in part by a desire to serve his own financial interests or those of the securities owners." *Pinter v. Dahl*, 486 U. S. 622, 643 647 (1988). "Solicitation" for purposes of § 12(a)(2) potential liability includes both personal solicitation and substantial involvement in the offering process. *Capri v. Murphy*, 856 F. 2d 473, 478 (2d Cir. 1988).

The Court concludes that Plaintiff has alleged sufficient facts to satisfy the applicable pleading requirements with regard to whether Chesapeake and the Individual Defendants may be liable as sellers pursuant to § 12(a)(2). The Amended Complaint includes factual allegations that Chesapeake and the Individual Defendants were involved in all stages of the offering, and it asserts that the Individual Defendants each signed the registration statement; these allegations are sufficiently detailed to present a plausible claim for relief. *See* Amended Complaint, ¶¶ 7-16, 22-24.

The Underwriter Defendants assert an additional argument in support of dismissing the § 12(a)(2) claim asserted against them. They contend Plaintiff has failed to identify with sufficient detail the role each played in the alleged Securities Act violations because it has failed to allege that it purchased securities from, or was solicited by, any of the named Underwriter Defendants. They argue that, to state a claim for relief under § 12(a)(2), Plaintiff must allege facts showing that the

12

defendant either sold the securities at issue to Plaintiff or solicited the purchase of those securities.

As discussed *supra*, the definition of a seller under § 12(a)(2) includes a "person who successfully solicits the purchase, motivated at least in part by a desire to serve his own financial interests or those of the securities owner." *Pinter,* 486 U.S. at 647; *In re Semgroup,* __ F. Supp. 2d at __, 2010 WL 1816434, at * 24 (citing *Maher v. Durango Metals,* 144 F. 3d 1302, 1307 n. 10 (10th Cir. 1998)). Solicitation has been held to includes the preparation and circulation of the prospectus as well as participation in "roadshows" designed to promote the offering. *See Capri,* 856 F.2d at 478; *In re American Bank Note Holographics Sec. Litigation*, 93 F. Supp 2d 424, 439 ( S. D. N. Y. 2000). Thus, a plaintiff must allege facts to show "either that the defendant was in privity with him, or, if the defendant was a collateral participant, that the defendant solicited the sales in question for financial gain." *In re Semgroup*, 2010 WL 1816434, at *24; *In re Constellation Energy Group, Inc. Securities Litigation*, 2010 WL 3221825, at * 13 (D. Md. Aug. 13, 2010) (unpublished opinion) (citing *In re Westinghouse Securities Litigation*, 90 F. 3d 696, 718 (3d Cir. 1996)). A plaintiff is not, at the pleading stage, "required to prove it purchased specific common units from specific underwriters." *In re Semgroup*, 2010 WL 1816434, at *24; *see also In re Westinghouse,* 90 F. 3d at 718. If a plaintiff alleges sufficient facts to show a defendant's purported solicitation, whether that particular defendant engaged in sufficient solicitation to be liable under § 12(a)(2) is a question of fact. *In re Westinghouse,* 90 F. 3d at 718-19.

In this case, Plaintiff contends the Underwriter Defendants were statutory sellers under § 12(a)(2) because they solicited purchases in the Chesapeake stock by arranging "multi-city roadshows" in which they met with potential investors and presented information about Chesapeake; furthermore, Plaintiff alleges the Underwriter Defendants assisted in the planning of the offering and actively participated in decisions regarding the strategy to be employed, the price at which the stock

13

would be sold, the language to be included in the registration statement, and responses to SEC comments during its review of that statement.  Plaintiff also alleges the Underwriter Defendants drafted and distributed offering documents and received a collective fee of more than $51 million for their work in connection with the offering.  *See* Amended Complaint, ¶¶ 22-25.

The Court concludes that Plaintiff has alleged sufficient facts to state a plausible claim for relief against the Underwriter Defendants based on their alleged status as statutory sellers.

<u>Conclusion:</u>

For the foregoing reasons,  the Court concludes that Plaintiff has alleged sufficient facts to state a plausible claim for relief under both § 11 and § 12(a)(2) of the Securities Act against all Defendants.  Accordingly, the motions to dismiss [Doc. Nos. 27 and 30] are DENIED.

IT IS SO ORDERED this 2nd day of September, 2010.

_____
TIMOTHY D. DEGIUSTI
UNITED STATES DISTRICT JUDGE