**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| UNITED FOOD AND COMMERCIAL )<br>  WORKERS UNION, et al.,       )<br>                                )<br>     Plaintiff,                )<br>                                )<br>vs.                             )<br>                                )<br>CHESAPEAKE ENERGY CORPORATION,  )<br>  et al.,                       )<br>                                )<br>     Defendants.               ) | No. CIV-09-1114-D |

**ORDER**

Before the Court is the Motion to Compel [Doc. No. 128] filed by Plaintiff United Food and Commercial Workers Union. Plaintiff seeks to compel Defendant Chesapeake Energy Corporation ("Chesapeake") and Defendant Aubrey McClendon ("McClendon") to produce certain documents and to answer specific interrogatories set forth in Plaintiff's initial discovery requests. The motion was fully briefed by the parties and, on December 16, 2011, the Court conducted a hearing.

I. Background:

This action was initially filed in the United States District Court for the Southern District of New York as a putative class action. After Plaintiff was designated by that court as the lead plaintiff, the case was transferred to this Court. A motion to certify the class is currently pending.

In the Amended Complaint, Plaintiff alleges Defendants violated the Securities Act of 1933 in connection with a July 9, 2008 public offering of 25 million shares of Chesapeake common stock. Specifically, Plaintiff alleges Defendants violated §§11 and 12(a)(2) of the Securities Act, 15 U. S. C. §§77k(a) and 77*l*(a)(2), by misstating and omitting from the registration statement and prospectus certain material facts, thereby rendering the statement misleading to potential

investors. Plaintiff also asserts a § 15 claim against McClendon and nine other individuals, seeking to hold them liable for the misstatements and omissions based on their status as "control persons" under the provisions of § 15.

The factual allegations underlying Plaintiff's claim that material facts were misstated and omitted are set out in the eighteen-page Amended Complaint. Stated in general terms, Plaintiff identifies three categories of allegedly misstated and omitted material facts: First, Defendants failed to properly disclose the "true risk and uncertainties" concerning the approximately 29 million shares of Chesapeake common stock held by McClendon, a substantial portion of which was held in margin accounts. Plaintiff alleges Defendants failed to disclose that McClendon lacked the financial resources necessary to satisfy his margin loans. *See* Amended Complaint, ¶¶ 34-37. Second, Plaintiff contends Defendants failed to properly disclose that Lehman Brothers ("Lehman") was the "counterparty to a material portion of the contracts hedging Chesapeake's oil and natural gas production." Plaintiff asserts the hedging contracts created a potential significant financial obligation for Lehman, and it was experiencing serious financial difficulties at the time of the July 9, 2008 offering, thus creating a risk that it would be unable to perform its contractual obligations to Chesapeake. Amended Complaint, ¶¶ 38-51. Finally, Plaintiff alleges Defendants failed to disclose that many of Chesapeake's hedging contracts contained a "kick-out" provision whereby the counterparty's exposure is "kicked out" if the price of natural gas falls below the price specified in the contract. Plaintiff contends that, although Defendants disclosed the existence of hedging contracts, they failed to include sufficient detail to permit investors to evaluate the possible risks associated with those contracts and the "kick-out" provisions. Amended Complaint, ¶¶ 52-55.

Plaintiff alleges that the foregoing constitute misstatements and omissions of material fact in that the information was important to a potential investor's evaluation of the risks associated with

the decision to purchase Chesapeake stock.  Plaintiff further contends Defendants were aware of the facts and had a duty to disclose them.  As set out in the Amended Complaint, in October of 2008, McClendon was required to sell his Chesapeake stock because he was unable to satisfy margin calls. Furthermore, Lehman's financial collapse rendered it unable to satisfy its hedging contract obligations to Chesapeake, thereby causing a decline in the value of Chesapeake's gas contracts. Additionally, Plaintiff contends the kick-out provisions in other hedging contracts resulted in Chesapeake receiving unfavorable gas prices and contributed to the decline in the value of Chesapeake stock.

Defendants deny these allegations and contend that they fully complied with all applicable statutory and regulatory disclosure requirements in connection with the 2008 offering and related materials.  They further contend that Plaintiff's claims are based on hindsight rather than on facts which were known or reasonably could have been known by Defendants at the time of the offering.

With respect to the current motion, Plaintiff contends that the subject interrogatories and document requests seek information and material which is relevant to the claims and is calculated to lead to the discovery of evidence admissible at trial.  Chesapeake and McClendon argue that the motion seeks information and documents beyond the permissible scope of discovery.  With respect to certain specific requests, they contend the requests are overly broad and unduly burdensome. McClendon argues that certain requested information involves personal financial and other private information which is beyond the scope of permissible discovery.

II. Standards governing discovery:

The Federal Rules of Civil Procedure establish the standards governing permissible discovery:

> (1) **Scope in General.** Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense....For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1). Where "a party objects that discovery goes beyond that relevant to the claims or defenses, 'the court would become involved to determine whether the discovery is relevant to the claims or defenses and, if not, whether good cause exists for authorizing it so long as it is relevant to the subject matter of the action.'" *In re Cooper Tire & Rubber Co.*, 568 F. 3d 1180, 1188-89 (10th Cir. 2009)(quoting Fed. R. Civ. P. 26 advisory committee's note (2000)). "Rule 26(b) will not permit unlimited discovery. Rule 26(b)(1) permits discovery only of '[r]elevant information' and the discovery must 'appear[ ] reasonably calculated to lead to the discovery of admissible evidence.'" *Murphy v. Deloitte & Touche Group Ins. Plan*, 619 F. 3d 1151, 1163 (10th Cir. 2010).

The Tenth Circuit has explained that "relevant" for Rule 26 purposes does not necessarily have the same meaning as that applied by the Federal Rules of Evidence. *In re Cooper Tire & Rubber Co.,* 568 F. 3d 1180, 1189 (10th Cir. 2009). "[T]he standard for determining whether information is relevant for purposes of pretrial discovery is substantially broader than the standard for relevance during trial.'" *Id.* (quoting 7 James William Moore, *et al., Moore's Federal Practice*, §37.22[2][a] (3d ed. 2007)). "In one respect, the term 'relevance' clearly is broader than 'admissibility' at trial: for purposes of discovery, '[r]elevant information need not be admissible at

trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.'" *In re Cooper Tire*, 568 F. 3d at 1189 (quoting Fed.R.Civ.P. 26(b)(1)).

Even if information sought in discovery is deemed relevant for Rule 26 purposes, however, the Court must, in some circumstances, limit otherwise permissible discovery. Fed. R. Civ. P. 26(b)(2)(C).  "[A]ll discovery is limited by Rule 26 (b)(2), which protects against, *inter alia*, overly burdensome discovery requests, discovery of cumulative materials, and overly costly discovery requests." *Murphy,* 619 F. 3d at 1163(citing Fed. R. Civ. P. 26(b)(2)(C)(i) and (ii)). Specifically, the rule provides that "the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule" where, *inter alia,* the Court finds "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C) (iii).  As the Tenth Circuit has noted, "the Supreme Court has underscored that "the requirement of Rule 26(b)(1) that the material sought in discovery be 'relevant' should be firmly applied, and the district courts should not neglect their power to restrict discovery [to protect] 'a party or person from annoyance, embarrassment, [or] oppression....'" *Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 648-49 (10th Cir. 2008) (quoting *Herbert v. Lando*, 441 U.S. 153, 177(1979) (quoting Fed.R.Civ.P. 26(c)(1)).

"When the district court does intervene in discovery, it has discretion in determining what the scope of discovery should be. '[T]he actual scope of discovery should be determined according to the reasonable needs of the action. The court may permit broader discovery in a particular case depending on the circumstances of the case, the nature of the claims and defenses, and the scope of

the discovery requested.'" *In re Cooper Tire,* 568 F. 3d at 1189 (quoting Fed. R. Civ. P. 26 advisory committee's note (2000)).

III. Application:

In light of the foregoing standards, the Court has considered the parties' operative pleadings, the arguments in the parties' briefs, and the presentations during the December 16 hearing. With respect to the specific interrogatories and document production requests which are the subject of Plaintiff's motion, the Court finds as follows:

A.  Requests for Production Nos. 10, 12, and 15 to Chesapeake.

In response to these requests, Chesapeake asserted general objections that the material sought is irrelevant and that the requests are overly broad, unduly burdensome, and oppressive.

The dispute appears to boil down to the search terms to be utilized by Chesapeake. The Court does not intend to take on the task of merging the parties' competing search term proposals. Instead, the Court informs the parties that Chesapeake's proposed search terms are too restrictive, and Plaintiff's proposed search terms are <u>far</u> too expansive. The parties are directed to meet and confer in order to reach agreement on the terms to be utilized. The parties are encouraged to cooperatively use techniques such as sampling in order to reasonably limit the volume of information ultimately produced. The Court cautions the parties that failure to reach agreement on the set of terms to be utilized will result in corrective action by the Court, which may include use of a Special Master, allocation of discovery costs, and appropriate sanctions for conduct determined to have frustrated the orderly conduct of discovery and the reasonable resolution of discovery disputes.

The parties are to report to the Court, in the form of a joint notice to the Court, within thirty (30) days of the date of this Order, their progress in reaching an agreement regarding the search terms to be utilized.

B.  Interrogatory Nos. 8 and 9 to Chesapeake.

In response to these interrogatories, Chesapeake again asserted general objections similar to those interposed in connection with Requests for Production Nos. 10, 12 and 15.  Additionally, Chesapeake objected on the grounds that the interrogatories duplicated "Plaintiff's Request for Production of Documents," and that the interrogatories were premature.[1]

Chesapeake's general objections to these interrogatories are not well taken under the circumstances of this case, and are overruled.  Further, as discovery has been ongoing in this case since early 2011, the notion that the interrogatories are premature is without merit.  Chesapeake is directed to properly answer the interrogatories within thirty (30) days of the date of this Order.[2]

C. Interrogatory Nos. 10, 15 and 16 to Chesapeake.

Chesapeake objected generally to these interrogatories on grounds virtually identical to grounds asserted in connection with Interrogatory Nos. 8 and 9.  With respect to these interrogatories, however, Chesapeake's position is more persuasive.

The Amended Complaint asserts that the registration statement failed to properly disclose material facts in three categories, described generally *supra* at pp. 1-3, and that the defendants failed to make reasonable and diligent investigation of the statements contained in the prospectus.  Against this backdrop, the objected-to interrogatories paint with too broad a brush.  As written, the

---

[1] The answer does not indicate which production request was duplicated, or whether any responsive documents were produced.

[2] Appropriate objections on the grounds of privilege, if any, must comply with Fed. R. Civ. P. 26(b)(5)(A).

interrogatories overreach, and seek information neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Chesapeake's objections to these interrogatories as they were originally propounded by Plaintiff, are sustained.

D. Requests for Production of Documents No. 2 to McClendon.

Request for Production No. 2 seeks broad categories of personal financial information from Defendant McClendon as of July 9, 2008. Defendant McClendon objected to the request in toto on grounds of relevance, and that the request seeks private and sensitive confidential information.

As discussed *supra,* in addition to limitations on discovery based on relevance to claims and defenses in the litigation, Fed. R. Civ. P. 26(c) empowers the Court to forbid or limit discovery to protect a party from annoyance, embarrassment, oppression, or undue burden or expense.[3] The rule serves in part to protect a party's privacy interests. *Seattle Times Co. v. Rhinehart*, 467 U. S. 20, 35 n. 21 (1984). With these limitations in mind, the Court concludes that the request in question is excessive in its scope. Plaintiff alleges in the Amended Complaint that Defendant McClendon "lacked the cash" – i.e., liquid assets – necessary to satisfy his margin loans. The request in question goes well beyond information reasonably related to this allegation. Accordingly, the Court directs that discovery may be had regarding documents covered by Request No. 2, subparts (a) and (d) only, as of the date set forth in the request.[4] Moreover, such discovery shall not only be subject to the existing Stipulated Protective Order [Doc. No. 104], but shall receive the additional protection of

---

[3] If a motion to compel is granted in part and denied in part, the Court may issue any protective order authorized under Rule 26(c). Fed.R.Civ.P. 37(a)(5)(C).

[4] The request, as written, includes tax returns among the categories of financial documents sought. Tax returns are subject to a qualified privilege, and should not be produced where, as here, the information sought is readily available from other sources. *Biliske v. American Live Stock ins. Co.*, 73 F.R.D. 124, 126 n.1 (W. D. Okla. 1977).

8

being restricted to review only by persons set forth in Paragraph 4.1(a),(b), (d), and (f) of the Stipulated Protective Order, unless otherwise ordered by the Court. Such document production is to be accomplished within thirty (30) days of the date of this Order.

IV.  Conclusion:

In accordance with the foregoing, Plaintiff's Motion to Compel [Doc. No. 128] is granted in part and denied in part, as set forth herein.

IT IS SO ORDERED this 6th day of January, 2012.

_____
TIMOTHY D. DEGIUSTI
UNITED STATES DISTRICT JUDGE