# EXHIBIT 9

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED FOOD AND COMMERCIAL WORKERS UNION, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>-against-<br><br>CHESAPEAKE ENERGY CORPORATION, AUBREY K. MCCLENDON, MARCUS C. ROWLAND, MICHAEL A. JOHNSON, RICHARD K. DAVIDSON, FRANK A. KEATING, BREENE M. KERR, CHARLES T. MAXWELL, MERRILL A. MILLER, JR., DONALD L. NICKLES, FREDERICK B. WHITTEMORE, UBS INVESTMENT BANK, ABN AMRO, BANC OF AMERICA SECURITIES LLC and WELLS FARGO SECURITIES,<br><br>Defendants. | **NO. 09-CIV-1114-D**<br><br>**CLASS ACTION**<br><br>**DEFENDANT AUBREY K. MCCLENDON'S AMENDED RESPONSES AND OBJECTIONS TO PLAINTIFF'S THIRD SET OF INTERROGATORIES** |

PROPOUNDING PARTY: UNITED FOOD AND COMMERCIAL WORKERS UNION

RESPONDING PARTY:   AUBREY K. MCCLENDON

SET NO.:                      THIRD, AMENDED RESPONSES

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, defendant Aubrey K. McClendon, by and through his counsel, Orrick, Herrington & Sutcliffe LLP, hereby provides these amended responses and objections to UNITED FOOD AND COMMERCIAL WORKERS UNION's ( "Plaintiff") Third Set of Interrogatories, dated January 23, 2012, as follows:

## PRELIMINARY STATEMENT

Mr. McClendon has not completed his discovery and has not completed his preparation for trial.  Further discovery, investigation, legal research, and analysis may supply additional facts, add meaning to known facts, and/or establish entirely new factual conclusions or legal contentions, all of which may lead to additions or modifications to the present responses.  No incidental or implied admissions are intended by these responses and objections.  The fact that Mr. McClendon has responded or objected to any interrogatory or part thereof shall not be deemed an admission that he accepts or admits to the existence of any facts set forth or assumed by such interrogatory or that he accepts or admits the merit of Plaintiff's allegations, that the response or objection constitutes admissible evidence, or that he has possession of any documents related to the interrogatory.  All objections to the interrogatories are based on information presently known to Mr. McClendon and are given without prejudice to his rights and without undertaking any obligation not imposed by law to provide additional supplemental responses or objections.

## GENERAL OBJECTIONS

1.      Mr. McClendon objects to the Definitions, Instructions, and Interrogatories to the extent they are inconsistent with or seek to impose upon Chesapeake obligations beyond those set forth in the Federal Rules of Civil Procedure, the local rules of the United States District Court for the Western District of Oklahoma, and/or Court Orders applicable to this litigation.

2.      Mr. McClendon objects to Plaintiff's interrogatories as unnecessarily duplicative of its request for production of documents.

3.      Mr. McClendon objects to these interrogatories to the extent they contain separate and discreet subparts, which under Rule 33 of the Federal Rules of Civil Procure are to be counted as separate interrogatories.

4.      Mr. McClendon objects to Plaintiff's interrogatories in their entirety as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

5.      Mr. McClendon objects to each and every Definition, Instruction, and/or Interrogatory to the extent that it seeks information protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or protection.  Any inadvertent production of such information shall not be deemed a waiver of any privilege or protection with respect to documents or information.

## OBJECTIONS TO DEFINITIONS

1.      That Mr. McClendon has not lodged a particular objection to one of Plaintiff's definitions does not constitute a concession that any of Plaintiff's definitions

are proper or reasonably calculated to lead to the discovery of relevant information.  Mr. McClendon's individual responses and objections below may also reject, amend, or narrow any of Plaintiff's definitions.

2.      Mr. McClendon objects to the definition of the terms "you" and "your" as overbroad and unduly burdensome to the extent it seeks information from outside his possession, custody, or control.

3.      Mr. McClendon objects to the definition of the term "document(s)" as overbroad on the grounds it seeks information, including electronically stored information, which is not within its custody or control or is not readily accessible because of undue burden or cost.  Moreover, Mr. McClendon objects to the definition to the extent it seeks to impose on Mr. McClendon obligations in consistent with the Federal Rules of Civil Procedure.

4.      Mr. McClendon objects to the definition of the term "identify" as overbroad and unduly burdensome to the extent it seeks information not in his personal knowledge.

## OBJECTIONS TO INSTRUCTIONS

5.      Mr. McClendon objects to the Instructions to the extent that they exceed the requirements of the Federal Rules of Civil Procedure, the Local Rules of the Western District of Oklahoma, or the rules of the Court in the above-captioned matter.

6.      Mr. McClendon further objects to the Instructions to the extent they seek to impose an obligation on it to review and identify electronically stored information from sources that are not reasonably accessible because of undue burden or cost.

7.     Mr. McClendon's investigation of its sources of electronically stored information is ongoing and Mr. McClendon is evaluating the scale, scope, and expected costs of electronic discovery in this case.

## OBJECTIONS TO RELEVANT TIME PERIOD

1.     Mr. McClendon objects to the Instructions included under the heading "Relevant Time Period" on the grounds that the referenced time period is overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.  Further, the referenced time period goes beyond the time period Plaintiff's counsel represented to the Court and to Defendants to be the applicable time period for discovery in this case.  Specifically, we refer Plaintiff to the following excerpt from the December 16, 2011 hearing transcript:

THE COURT: -- real quickly?

Is the relevant time period still the time period that was agreed on by the parties in the correspondence that went back and forth?

MR. JACONETTE: Yes, it is, Your Honor, and we've discussed that relevant time period being April to November of 2008, and we both agree that it wouldn't be productive to try and go back on that at this time.

Hearing on Motion to Compel, at 4:19-5:1, Dec. 16, 2011.  Unless otherwise noted, Chesapeake's responses will be limited to the relevant discovery time frame negotiated and agreed to by the parties: April 1, 2008 through November 30, 2008 (the "Relevant Time Frame").

Each of the GENERAL OBJECTIONS set forth above is incorporated into each of the SPECIFIC OBJECTIONS AND RESPONSES set forth below.

## SPECIFIC OBJECTIONS AND RESPONSES

### INTERROGATORY NO. 5:

State all facts supporting and undermining your contentions in your Affirmative Defenses. Without limitation to your response to the aforementioned request, your response should identify by Bates number all documents concerning your contentions and specific contents of each such document that you rely upon in purported support of your defenses, and also, identify all persons with knowledge and/or information and/or whose conduct you rely upon in purported support of your defenses specifying the knowledge, information and/or conduct.

### RESPONSE TO INTERROGATORY NO. 5:

In addition to the General Objections set forth above, Mr. McClendon objects to this request on the grounds that it is overly broad, unduly burdensome, and oppressive. Mr. McClendon also objects to this request to the extent that it calls for production of information protected by the attorney-client privilege, work-product doctrine, or other applicable privilege or privacy right.  Specifically, Mr. McClendon objects to the extent the request calls for facts that "undermine" his defenses because it calls for the production of opinion work product.  Subject to these objections, Mr. McClendon is not presently aware of facts that undermine his defenses.

Mr. McClendon objects to this interrogatory on the basis that it includes separate and distinct requests in what purports to be a single interrogatory.  Mr. McClendon's

affirmative defenses are separate and distinct and thus cannot be addressed as a single interrogatory.  *See Billings v. Conseco Health Ins. Co.*, 2011 WL 6152029 at *1-3 (W.D. Okla., Dec. 12, 2011) (interrogatories must be limited to a single subject); *Bovarie v. Schwarzenneger*, 2011 WL 719206 at *1-2 (S.D. Cal., Feb. 22, 2011) (interrogatory asking for responses as to multiple affirmative defenses is counted as separate interrogatories for each affirmative defense).  As such, Mr. McClendon will consider this interrogatory to count as 16 interrogatories, and will not respond to additional interrogatories that exceed the limit set forth in the Court's January 7, 2011 Minute Order.

As to the Fifth Affirmative Defense, Mr. McClendon further objects that this interrogatory is duplicative of Plaintiff's First Set of Interrogatories, Nos. 12 and 14. Defendants continue to meet and confer with Plaintiff regarding search terms for Plaintiff's Request for Production No. 12, relating to the loss causation defense. Defendants have collected 44,154 documents as a result of searches connected to the loss causation defense, including all communications between the agreed-upon Chesapeake custodians and all of the analyst, investor, and media domain names provided by Plaintiff.  Those documents have been exported to an external site for final review and production.  Review of those documents is ongoing.  Defendants are continuing to identify, collect, and review documents responsive to these requests, subject to ongoing discussions with Plaintiff.

As to the Tenth Affirmative Defense, Mr. McClendon objects to this request on the grounds that it is duplicative of Plaintiff's First Set of Interrogatories to the Individual

Defendants, Nos. 2 and 3; Plaintiff's Second Set of Interrogatories to the Individual

Defendants, No. 4; Plaintiff's First Set of Requests for Production of Documents to

Chesapeake, Nos. 1-13 and 15; and Plaintiff's Second Set of Requests for Production of

Documents to Chesapeake, Nos. 17-19.  Defendants continue to meet and confer with

Plaintiff regarding search terms for Plaintiff's Request for Production Numbers 10 and

15, relating to the due diligence defense.  Defendants have conducted multiple searches

returning hundreds of thousands of documents, most of which are likely irrelevant, and

have asked Plaintiff to provide limiting terms and/or date ranges to narrow down the

search to documents that are more likely to be responsive.  Defendants are continuing to

identify, collect, and review documents responsive to these requests, subject to ongoing

discussions with Plaintiff.

Discovery, investigation, and analysis in this case are ongoing.  Therefore,

Chesapeake reserves its right to update this response with additional information prior to

the completion of fact discovery if he identifies additional responsive documents.

Subject to and without waiving the foregoing objections, Mr. McClendon responds

as follows:

**<u>First Affirmative Defense</u>**

Mr. McClendon refers Plaintiff to the Chesapeake Defendants' Motion to Dismiss.

**<u>Second Affirmative Defense</u>**

Mr. McClendon refers Plaintiff to the Chesapeake Defendants' Opposition to

Class Certification, pp. 15-20, 23-24.

### Third Affirmative Defense

Mr. McClendon incorporates responses regarding the Eighth and Fourteenth Affirmative Defenses below.

### Fourth Affirmative Defense

Mr. McClendon refers Plaintiff to the Chesapeake Defendants' Motion for Summary Judgment, pages 25-35, and the Declaration of Allan J. Kleidon, pages 7-10, 22-23, 24-29, 32-33, 41-43, 50-51, in support thereof.

### Fifth Affirmative Defense

Mr. McClendon refers Plaintiff to the Chesapeake Defendants' Motion for Summary Judgment, pages 4-11, 18-25, and the Declaration of Allan J. Kleidon, pages 5-7, 22-24, 29-32, 37-41, 47-50, in support thereof.  In addition, Mr. McClendon responds as follows:

*Kick-out Hedging Contracts*

The Complaint alleges that Chesapeake's July 9, 2008 Form 424B5 Prospectus Supplement (the "Registration Statement") "did not disclose that many of the Company's hedging agreements contained a 'kick-out' provision under which the counterparty exposure is 'kicked out' if the price of natural gas falls below a specific price." Complaint ¶ 52.

Plaintiff's allegation that Chesapeake did not disclose kick-out hedging contracts is false, and therefore the alleged omission could not have caused any losses to Plaintiff. The kick-out hedges were disclosed in detail in the Company's May 12, 2008 Form 10-Q for the period ended March 31, 2008.  The May 12, 2008 Form 10-Q disclosed the

volume and fair value of its knock-out hedging contracts.  *See* May 12, 2008 Form 10-Q

at 34-37.  The May 12, 2008 Form 10-Q was incorporated by reference in the July 9,

2008 Registration Statement.  *See* Registration Statement at S-29.

Plaintiff's Opposition to the Motion to Dismiss ("MTD Opposition Brief") at 14–

15 asserted for the first time that Defendants should have "disclose[d] the increase in

volume and decrease in fair value of the knockout hedges [that] they were aware of as of

the time of the Offering."  Specifically, Plaintiff alleges that Chesapeake's August 11,

2008 Form 10-Q for the period ended June 30, 2008 contained information regarding

kick-out hedging contracts that should have been included in the Registration Statement.

MTD Opposition Brief at 2, 13-15.

The Chesapeake Defendants contend that this allegation is improper because it has

no basis in the Complaint.  However, even if Plaintiff pursues this argument, the

Chesapeake Defendants contend that there was no negative stock price reaction upon this

disclosure, demonstrating that Plaintiff did not suffer any losses from this allegation even

as amended by Plaintiff's MTD Opposition Brief.  *See* Chesapeake Defendants' Motion

for Summary Judgment at pp. 7, 18, 20-21; Declaration of Allan W. Kleidon at pp. 29-32.

Therefore, the Chesapeake Defendants contend that Plaintiff did not suffer any losses

from this alleged misrepresentation, and any losses allegedly suffered by Plaintiff as a

result of stock price declines during the class period are not recoverable as damages

under Sections 11 and 12 of the Securities Act of 1933.

*Counterparty Hedging Contracts with Lehman Brothers*

The Complaint also asserts that the Registration Statement "was required to disclose that Lehman was a counterparty for a material amount of the Company's hedging contracts and that should Lehman not be able to perform, the Company could suffer losses of as much as $50 million." Complaint ¶ 38.

Plaintiff points to an October 10, 2008 press release asserting that it revealed "that the company had financial exposure to Lehman, which included amounts for unpaid gas sales and amounts due and owing under various derivative contracts" and that "the losses to Chesapeake '[would] not exceed $50 million.'" Complaint ¶ 51. But there was no negative stock price reaction upon this disclosure. *See* Chesapeake Defendants' Motion for Summary Judgment at pp. 9, 18, 22-23; Declaration of Allan W. Kleidon at pp. 33-41. Therefore, the Chesapeake Defendants contend that Plaintiff did not suffer any losses from this alleged omission, and any losses allegedly suffered by Plaintiff as a result of stock price declines during the class period are not recoverable as damages under Sections 11 and 12 of the Securities Act of 1933.

*Aubrey McClendon's Shares Held in Margin Accounts*

The Complaint itself acknowledges that the Registration Statement disclosed that virtually all of CEO Aubrey McClendon's Chesapeake stock was held in margin accounts, including the exact number of margined shares. Complaint ¶ 34. This information was disclosed in Chesapeake's April 29, 2008 Proxy Statement on Schedule 14A at 29, which was incorporated by reference into the Registration Statement. *See* Registration Statement at S-29. Plaintiff nevertheless asserts that Chesapeake "failed to disclose that Defendant McClendon lacked the cash necessary to satisfy his margin loans

such that if there was a significant decline in the value of his investments, the stock would be seized and sold into the market . . . ."  Complaint ¶ 34.

The information concerning Mr. McClendon's margin sales was disclosed for the first time in Chesapeake's press release after the markets closed on October 10, 2008. *See* Complaint ¶ 37; *see also*, October 10, 2008 Press Release.

There was no negative stock price reaction upon this disclosure.  *See* Chesapeake Defendants' Motion for Summary Judgment at pp. 9-11, 23-25; Declaration of Allan W. Kleidon at pp. 43-50.  Therefore, the Chesapeake Defendants contend that Plaintiff did not suffer any losses from this alleged omission, and any losses allegedly suffered by Plaintiff as a result of stock price declines during the class period are not recoverable as damages under Sections 11 and 12 of the Securities Act of 1933.

*Plaintiff's Miscellaneous Loss Causation Allegations*

Plaintiff also alleges that the omitted facts allegedly continued to be revealed "[d]uring late 2008 and early 2009" and "the price of Chesapeake stock declined to less than $12 per share, which is approximately 80% below the Secondary Offering price." Complaint ¶ 55.  However, as a matter of law and widely accepted economic theory, any such news would have had no impact on Chesapeake's market price because it had already been publicly disclosed as of October 10, 2008.  *See* Declaration of Allan W. Kleidon at p. 20.  Therefore, any stock price decline on subsequent dates cannot be attributed to any "omission" alleged in the Complaint and is not recoverable as damages under Sections 11 and 12 of the Securities Act of 1933.

Similarly, Plaintiff alleges that "[b]etween October 3 and 9, 2008, the price of Chesapeake's stock declined from $28.55 per share on extremely heavy trading volume." Complaint ¶ 36.  However, the information upon which Plaintiff attempts to reverse-engineer its claims had either already occurred prior to that date, as in the case of the new kick-out hedging contracts allegation (August 11, 2008), or had not yet been publicly disclosed, as in the case of the Lehman exposure and margin sales (October 10, 2008). *See* MTD Opposition Brief at 13-15 (kick-out provisions in hedging contracts); Complaint ¶ 37 (margined stock sales), ¶ 51 (exposure on Lehman hedges), and ¶ 54 (kick-out provisions in hedging contracts); October 10, 2008 Press Release.  Moreover, as stated above, when those facts were disclosed to the market, there was no negative stock price reaction.  *See* Chesapeake Defendants' Motion for Summary Judgment at pp. 6-11, 18-25; Declaration of Allan W. Kleidon at pp. 5-7, 22-24, 29-32, 37-41, 47-50. Therefore, any stock price decline between October 3 and 9, 2008 cannot be attributed to any "omission" alleged in the Complaint and is not recoverable as damages under Sections 11 or 12 of the Securities Act of 1933.

*Change in Macroeconomic and Market Conditions Between July 9, 2008 and October 10, 2008*

Further illustrating the flaws in Plaintiff's allegation that the stock price drop between the date of the July 9, 2008 Offering and October 10, 2008 press release was caused by the supposed "omissions" in the Registration Statement is the fact that the world changed between the July 9, 2008 Offering date and October 10, 2008.

Under applicable law and widely accepted economic theory, price declines that are unrelated to the alleged misrepresentations in the Registration Statement, such as any declines that may have been caused by the intervention of the collapse of the financial markets between the July 9, 2008 Offering and October 10, 2008, may not be charged to the Chesapeake Defendants under Sections 11 and 12 of the Securities Act of 1933. *See* Chesapeake Defendants' Motion for Summary Judgment at pp. 15-16; Declaration of Allan J. Kleidon at pp. 26-29.

### Sixth Affirmative Defense

Mr. McClendon incorporates his responses to the Eighth and Fourteenth Affirmative Defenses. The true facts pertaining to the allegations in the complaint were all publically disclosed, including the fact that Aubrey K. McClendon's Chesapeake stock holdings were largely held on margin.

### Seventh Affirmative Defense

Mr. McClendon refers Plaintiff to the risk factors disclosed in Chesapeake's Form 424B2 Prospectus, filed July 10, 2008, pp. S-9 – S-14. Specifically, the Prospectus disclosed:

> S-9:
> ***Natural gas and oil prices are volatile. A decline in prices could adversely affect our financial position, financial results, cash flows, access to capital and ability to grow.***
>
> Our revenues, operating results, profitability and future rate of growth depend primarily upon the prices we receive for the natural gas and oil we sell. Prices also affect the amount of cash flow available for capital expenditures and our ability to borrow money or raise additional capital. The amount we can borrow from banks is subject to periodic redeterminations based on prices specified by our bank group at the time of

redetermination. In addition, we may have ceiling test write-downs in the future if prices fall significantly.

Historically, the markets for natural gas and oil have been volatile and they are likely to continue to be volatile. Wide fluctuations in natural gas and oil prices may result from relatively minor changes in the supply of and demand for natural gas and oil, market uncertainty and other factors that are beyond our control, including:

- worldwide and domestic supplies of natural gas and oil;
- weather conditions;
- the level of consumer demand;
- the price and availability of alternative fuels;
- the proximity and capacity of natural gas pipelines and other transportation facilities;
- the price and level of foreign imports;
- domestic and foreign governmental regulations and taxes;
- the ability of the members of the Organization of Petroleum Exporting Countries to agree to and maintain oil price and production controls;
- political instability or armed conflict in oil-producing regions; and
- overall domestic and global economic conditions.

These factors and the volatility of the energy markets make it extremely difficult to predict future natural gas and oil price movements with any certainty. Declines in natural gas and oil prices would not only reduce revenue, but could reduce the amount of natural gas and oil that we can produce economically and, as a result, could have a material adverse effect on our financial condition, results of operations and reserves. Further, natural gas and oil prices do not necessarily move in tandem. Because approximately 93% of our reserves at December 31, 2007 were natural gas reserves, we are more affected by movements in natural gas prices.

S-13:

**Our hedging activities may reduce the realized prices received for our natural gas and oil sales and require us to provide collateral for hedging liabilities.**

In order to manage our exposure to price volatility in marketing our natural gas and oil, we enter into natural gas and oil price risk management arrangements for a portion of our expected production. Commodity price hedging may limit the prices we actually realize and therefore reduce natural gas and oil revenues in the future. Our commodity hedging activities will impact our earnings in various ways, including recognition of certain mark-to-market gains and losses on derivative instruments. The fair value of our natural gas and oil derivative instruments can fluctuate

significantly between periods. For example, for the quarter ended March 31, 2008, we incurred $1.132 billion of unrealized losses associated with mark-to-market changes in the value of outstanding hedging contracts accounted for under SFAS No. 133. The fair value of our natural gas and oil derivative instruments outstanding as of March 31, 2008 was a liability of approximately $2.232 billion. As a result of increasing commodity prices subsequent to March 31, 2008, we anticipate incurring additional substantial unrealized losses in the quarter ended June 30, 2008, and we expect such losses could result in our reporting negative revenues from natural gas and oil sales and will result in an overall net loss for such quarter. In addition, our commodity price risk management transactions may expose us to the risk of financial loss in certain circumstances, including instances in which:

- our production is less than expected;
- there is a widening of price differentials between delivery points for our production and the delivery point assumed in the hedge arrangement; or
- the counterparties to our contracts fail to perform under the contracts.

All but three of our commodity price risk management counterparties require us to provide assurances of performance in the event that the counterparties' mark-to-market exposure to us exceeds certain levels. Most of these arrangements allow us to minimize the potential liquidity impact of significant mark-to-market fluctuations by making collateral allocations from our revolving bank credit facility or directly pledging natural gas and oil properties, rather than posting cash or letters of credit with the counterparties. Future collateral requirements are uncertain, however, and will depend on the arrangements with our counterparties and highly volatile natural gas and oil prices.

That the majority of Aubrey McClendon's stock was held on margin was disclosed in Chesapeake's April 29, 2008 Proxy Statement on Schedule 14A at 29, which was incorporated by reference into the Registration Statement. *See* Registration Statement at S-29.

**<u>Eighth Affirmative Defense</u>**

Mr. McClendon responds that the substance of the information Plaintiff alleges was omitted or misrepresented was disclosed in Chesapeake's public filings and/or other public releases, or was otherwise known to the markets and/or the investing community:

Information disclosed in Chesapeake's public filings and/or public releases:

*Kick-out Hedging Contracts*

The Complaint alleges that Chesapeake's July 9, 2008 Form 424B5 Prospectus Supplement (the "Registration Statement") "did not disclose that many of the Company's hedging agreements contained a 'kick-out' provision under which the counterparty exposure is 'kicked out' if the price of natural gas falls below a specific price." Complaint ¶ 52.

Plaintiff's allegation that Chesapeake did not disclose kick-out hedging contracts is false. The kick-out hedges were disclosed in detail in the Company's May 12, 2008 Form 10-Q for the period ended March 31, 2008. The May 12, 2008 Form 10-Q disclosed the volume and fair value of its knock-out hedging contracts. *See* May 12, 2008 Form 10-Q at 34-37. The May 12, 2008 Form 10-Q was incorporated by reference in the July 9, 2008 Registration Statement. *See* Registration Statement at S-29.

Plaintiff's Opposition to the Motion to Dismiss ("MTD Opposition Brief") at 14–15 asserted for the first time that defendants should have "disclose[d] the increase in volume and decrease in fair value of the knockout hedges [that] they were aware of as of the time of the Offering." Specifically, Plaintiff alleges that Chesapeake's August 11, 2008 Form 10-Q for the period ended June 30, 2008 contained information regarding

kick-out hedging contracts that should have been included in the Registration Statement. MTD Opposition Brief at 2, 13-15.

Mr. McClendon contends that this allegation is improper because it has no basis in the Complaint.  However, even if Plaintiff pursues this argument, Mr. McClendon contends that this information was disclosed in the July 9, 2008 Prospectus at page S-3, and in a Form 8-K filed by Chesapeake on July 9, 2008.  Specifically, Chesapeake disclosed that: "Commodity prices have continued to increase since March 31, 2008, and *we anticipate incurring additional substantial losses in the quarter ended June 30, 2008*, and we expect such losses could result in our reporting negative revenues from natural gas and oil sales and will result in an overall net loss for such quarter."

*Counterparty Hedging Contracts with Lehman Brothers*

The Complaint also asserts that the Registration Statement "was required to disclose that Lehman was a counterparty for a material amount of the Company's hedging contracts and that should Lehman not be able to perform, the Company could suffer losses of as much as $50 million." Complaint ¶ 38.  In fact, Chesapeake disclosed the risks associated with its hedging activities with counterparties in the Registration Statement, as provided above, at pages S-13 and S-24, which explained Chesapeake's risk of financial losses, including the possibility that one or more of its hedging counterparties could fail to fulfill its hedging agreements.  Specifically, the Registration Statement disclosed at page S-13 that: "… our commodity price risk management transactions may expose us to the risk of financial loss in certain circumstances, including circumstances in which: … the counterparties to our contracts fail to perform under the

contracts." In addition, the Prospectus disclosed at page S-24 that "affiliates of certain of the underwriters are counterparties to our hedging transactions…" Chesapeake did not know, and could not have known, that Lehman was trending towards bankruptcy, and thus could not have disclosed that information.

*Aubrey McClendon's Shares Held in Margin Accounts*

The Complaint itself acknowledges that the Registration Statement disclosed that virtually all of CEO Aubrey McClendon's Chesapeake stock was held in margin accounts, including the exact number of margined shares. Complaint ¶ 34. This information was disclosed in Chesapeake's April 29, 2008 Proxy Statement on Schedule 14A at 29, which was incorporated by reference into the Registration Statement. *See* Registration Statement at S-29. Plaintiff nevertheless asserts that Chesapeake "failed to disclose that Defendant McClendon lacked the cash necessary to satisfy his margin loans such that if there was a significant decline in the value of his investments, the stock would be seized and sold into the market . . . ." Complaint ¶ 34. Chesapeake had no duty to disclose Mr. McClendon's general financial condition and fully disclosed Mr. McClendon's margined holdings to the extent of its responsibilities under SEC Regulation S-K, Item 403(b). *See* Chesapeake Defendants' Motion for Summary Judgment at pp. 9-11, 35-39.

Information otherwise known to the markets and/or the investing community:

In addition to the above regarding Mr. McClendon's margined holdings, Mr. McClendon refers Plaintiff to the Chesapeake Defendants' Motion for Summary Judgment, which explains that the concept of margined holdings and the risk that they

may be liquidated under negative market conditions is inherent in the concept of margining and well-known among investors. *See* Motion For Summary Judgment, p. 10; Declaration of Allan W. Kleidon at ¶ 96.

### Ninth Affirmative Defense

Mr. McClendon refers Plaintiff to the Chesapeake Defendants' Opposition to Class Certification, pp. 15-20, 23-24.

### Tenth Affirmative Defense

Mr. McClendon is Chesapeake's Chairman of the Board and Chief Executive Officer and served in those positions at the time of the Offering. Mr. McClendon was a member of the working group for the Offering.

A meeting of the Board of Directors was held on July 1, 2008, and information related to the Offering was considered at that meeting. *See* CHK00151396-CHK00151406. The minutes of that Board meeting reflect that the Board of Directors reviewed and discussed the recommendations of management related to the Offering and determined the Offering would be in Chesapeake's best interest. The Board created a special "Pricing Committee," comprised of Mr. McClendon, to determine the final terms of the Offering, and authorized Chesapeake's officers to prepare and file a prospectus and any relevant supplements related to the Offering, in addition to generally taking any actions necessary to effectuate the Offering. In the regular course of his duties, Mr. McClendon relied in good faith on Chesapeake's records, and information, opinions, reports, and statements presented by Chesapeake's officers and employees, committees of the Board of Directors, and other professionals such as lawyers and accountants selected

with reasonable care on behalf of Chesapeake, as is permitted under Oklahoma law.  *See* Okla. Stat. Ann. tit. 18, § 1027(E); Chesapeake's July 9, 2008 Form 424B2, p. S-31, 10.

Henry Hood, Chesapeake's General Counsel, along with Chesapeake's internal legal team, Commercial Law Group, PC, and Bracewell Giuliani LLP, reviewed relevant documents and provided legal advice to Chesapeake and the Board of Directors in connection with the prospectus and Offering.

The Board of Directors similarly relied on estimates of Chesapeake's natural gas and oil reserves and related future net cash flows and present values thereof provided by Chesapeake's internal accountants and reserve engineers, Netherland, Sewell & Associates, Inc., Schlumberger Data and Consulting Services, Lee Keeling and Associates, Inc., Ryder Scott Company, L.P., and LaRoche Petroleum Consultants, Ltd.

Financial and business analysis connected to the Offering and preparation of the prospectus, registration statement, and supplementary prospectus, related to the due diligence efforts of the company was performed by numerous internal Chesapeake employees, including Michael A. Johnson, the Senior Vice President – Accounting, Controller, and Chief Accounting Officer; members of Chesapeake's Accounting Department, including Traci Cook, Kajsa Greenhoward, Eric Fares, and Mary Ann Sanders; members of Chesapeake's Treasury Department; Jeff Mobley, Senior Vice President – Investor Relations and Research; Jennifer Grigsby, Senior Vice President and Treasurer and Corporate Secretary; and Marc Rowland, Executive Vice President and Chief Financial Officer; among others.  External due diligence was performed by a

working group led by Cravath, Swaine & Moore LLP, along with lead underwriters Lehman Brothers and UBS Investment Bank.

Chesapeake worked with its external partners to develop a timeline for the Offering, which can be found at CHK00004618-4620.  Chesapeake held an Organizational Meeting on July 7, 2008, to discuss the Offering and the supporting documentation.  *See* CHK00151203-245; UND_WFS00000001-617.  Pages II-1-2, IIIA-1 – IIIC-2 of the Organizational Meeting document reflect some of the specific due diligence that was carried out.  PricewaterhouseCoopers ("PwC") also consented to incorporation of its audit opinions regarding Chesapeake's accounting, financial statements, and internal control certifications, including the financial statements and certifications that were part of the SEC filings incorporated into the registration statement for the Offering.  PwC representatives were on-site at Chesapeake for most of the year as part of their ongoing audit of Chesapeake's annual financial statements and reviews of the quarterly financial statements included in Chesapeake's 10-Q filing.

Chesapeake held four due diligence phone calls.  A legal phone call was led by Henry Hood.  A business call was led by Marc Rowland.  PwC led an auditor call.  A "reserve" call to discuss Chesapeake's oil and gas reserves was led by Chesapeake's outside reserve engineers.  During these calls, the various aspects of Chesapeake's business and the Offering were vetted by the external parties listed above, as well as others invited to participate, as outlined in the Organizational Meeting document mentioned above.

The Offering was undertaken pursuant to a shelf registration as part of a continuous offering process.  Chesapeake had conducted several other securities offerings prior to July 2008, including offerings of senior notes, common stock, and preferred stock in May and June of 2008.  The due diligence work performed in connection with certain of the earlier offerings informed the due diligence for the July 9, 2008 Offering.  *See, e.g.,* CHK00003372.  The prior work included drafting and review of the general prospectus and other disclosure documents that discussed important facts and dynamics of Chesapeake's business, market positioning, finances and accounting, hedging, and other activities, a host of related due diligence activities.

### Eleventh Affirmative Defense

Mr. McClendon responds that the alleged omissions were all actually disclosed, as explained in his responses regarding the Eighth and Fourteenth Affirmative Defenses, which are incorporated herein, and thus Plaintiff's claims are barred because it had knowledge of the alleged omissions and thus any losses it allegedly suffered are the result of Plaintiff's own acts or omissions in failing to take reasonable steps to protect itself in the face of public knowledge.

### Twelfth Affirmative Defense

Mr. McClendon responds that the alleged omissions were all actually disclosed, as explained in his responses regarding the Eighth and Fourteenth Affirmative Defenses, which are incorporated herein, as well as the response regarding Mr. McClendon's Seventh Affirmative Defense above, and thus Plaintiff was advised regarding the material

facts and risks concerning its investments, thereby assuming the risk of any loss.  Plaintiff is therefore estopped from recovering any relief.

### Thirteenth Affirmative Defense

Mr. McClendon responds that discovery is ongoing and he has no information as to this affirmative defense at this time.  Mr. McClendon will update this interrogatory based on any information he discovers going forward.

### Fourteenth Affirmative Defense

Mr. McClendon responds as follows:

The Facts Were Disclosed in the Registration Statement

Mr. McClendon incorporates his response regarding the Eighth Affirmative Defense.

The Facts Were Not Known or Knowable at the Time of the Offering

Mr. McClendon refers Plaintiffs to the Chesapeake Defendants' Motion for Summary Judgment, pages 1-11, 18-25; and the Declaration of Allan W. Kleidon, pages 13-16, 26-51, in support thereof.

*Kick-out Hedging Contracts*

Mr. McClendon refers Plaintiffs to the Chesapeake Defendants' Motion for Summary Judgment, pages 5-7, 20-22, 31-32; and the Declaration of Allan W. Kleidon, pages 13-14, 26-33, in support thereof.  Mr. McClendon contends that this allegation is improper because it has no basis in the Complaint.  However, even if Plaintiff pursues this argument, Mr. McClendon contends that this information was disclosed in the July 9, 2008 Prospectus at page S-3, and in a Form 8-K filed by Chesapeake on July 9, 2008.

Specifically, Chesapeake disclosed that: "Commodity prices have continued to increase since March 31, 2008, and ***we anticipate incurring additional substantial losses in the quarter ended June 30, 2008***, and we expect such losses could result in our reporting negative revenues from natural gas and oil sales and will result in an overall net loss for such quarter." Chesapeake updates its financial disclosures of its hedging positions on a quarterly basis, as shown in Chesapeake's disclosure of the change in hedging positions in its August 11, 2008 10-Q, which reported information as of June 30, 2008. The August 11, 2008 disclosure was the earliest point at which Chesapeake was legally required to disclose the information contained in its Form 10-Q for the period ended June 30, 2008. Chesapeake had no duty to disclose its incomplete, interim financial results, and thus had no duty to disclose its mark to market changes in the kickout provisions in its natural gas hedging positions, and any disclosures would have lacked the necessary analysis and context that Chesapeake provided in order to disclose its updated hedging arrangements in the August 10-Q. *See, e.g., Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1210 (1st Cir. 1996) ("we reject any bright-line rule that an issuer engaging in a public Offering is obligated to disclose interim operating results for the quarter in progress whenever it perceives a possibility that the quarter's results may disappoint the market."); *In re Thornburg Mortg., Inc. Sec. Litig.*, CIV 07-0815 JB/WDS, 2011 WL 2429189 at *33, 36 (D.N.M. June 2, 2011).

*Counterparty Hedging Contracts with Lehman Brothers*

Mr. McClendon refers Plaintiffs to the Chesapeake Defendants' Motion for Summary Judgment, pages 4-6, 7-9, 22-23, 32-34; and the Declaration of Allan W.

Kleidon, pages 14-15, 26-29, 33-43, in support thereof.  At the time of the Offering, Chesapeake's hedge positions with Lehman were such that Chesapeake owed Lehman money on the trades, as opposed to the other way around.  The likelihood that Lehman would go bankrupt was less than one-in-thousands.  When the risk that oil and gas prices would collapse such that Lehman may owe Chesapeake money is factored in, the situation becomes even less remote.

*Aubrey McClendon's Shares Held in Margin Accounts*

Mr. McClendon refers Plaintiffs to the Chesapeake Defendants' Motion for Summary Judgment, pages 4-6, 9-11, 23-25, 34-35; and the Declaration of Allan W. Kleidon, pages 15-16, 26-29, 43-51, in support thereof.  Chesapeake disclosed the extent of Mr. McClendon's margined holdings, as discussed in response to Interrogatory 8.  Mr. McClendon did not, and could not have known, how Mr. McClendon would arrange his personal finances on a day-to-day basis, or how Mr. McClendon would react to the global financial crisis.  Further, the chance that Chesapeake's stock price would drop to the level necessary to trigger margin sales after the meltdown of the global economy was less than one-in-thousands.  The possibility of Mr. McClendon's forced margin sales was even less remote when combined with the likelihood of a global financial crisis that would inhibit Mr. McClendon's access to funds to meet potential margin calls.

<u>The Facts Constituted Speculative Information that as a Matter of Law Was Not Required to be Included in the Registration Statement</u>

Mr. McClendon refers Plaintiffs to the Chesapeake Defendants' Motion for Summary Judgment, pages 1-11, 18-25, 30-39; and the Declaration of Allan W. Kleidon, pages 13-16, 26-51.  Mr. McClendon incorporates his responses at pp. 24-25 *supra*.

Moreover, Chesapeake had no duty to disclose Mr. McClendon's personal finances under Regulation S-K, Item 403(b).  *See* p. 19 *supra*; Chesapeake Defendants' Motion for Summary Judgment at pp. 9-11, 35-39.  Item 403(b) requires companies to disclose the shares held by directors and executive officers that are "beneficially owned" or "pledged as a security."  Chesapeake did exactly that, and any disclosure beyond is not only not required by law, but would be speculative and inappropriate.

### Fifteenth Affirmative Defense

Mr. McClendon incorporates his responses regarding the Eighth and Fourteenth Affirmative Defenses.

### Sixteenth Affirmative Defense

Mr. McClendon responds that discovery is ongoing and he has no information as to this affirmative defense at this time.  Mr. McClendon will update this interrogatory based on any information he discovers going forward.

### INTERROGATORY NO. 6:

State all facts supporting and undermining your contention in your Fourth Affirmative Defense that any alleged misstatements or omissions in the Complaint were not material.

**RESPONSE TO INTERROGATORY NO. 6:**

In addition to the General Objections set forth above, Mr. McClendon objects to this request on the grounds that it is overly broad, unduly burdensome, and oppressive. Mr. McClendon also objects to this request to the extent that it calls for production of information protected by the attorney-client privilege, work-product doctrine, or other applicable privilege or privacy right.  Specifically, Mr. McClendon objects to the extent the request calls for facts that "undermine" his defenses because it calls for the production of opinion work product.  Subject to these objections, Mr. McClendon is not presently aware of facts that undermine his defenses.

Discovery, investigation, and analysis in this case are ongoing.  Therefore, Chesapeake reserves its right to update this response with additional information prior to the completion of fact discovery if he identifies additional responsive documents.

Subject to and without waiving the foregoing objections, Mr. McClendon incorporates his response to the Fifth Interrogatory above.

**INTERROGATORY NO. 7:**

State all facts supporting and undermining your contention in your Fifth Affirmative Defense that the damages allegedly suffered by Plaintiff, if any, were caused in whole or in part, by reasons, entities or persons other than the Defendants or there [SIC] alleged actions, misstatements, failures to act or omissions. Your response should identify (but not be limited to) these reasons, entities or parties, and all purportedly causal conduct of the entities or parties, when that conduct occurred, who participated in the conduct, and all documents evidencing the conduct.

**RESPONSE TO INTERROGATORY NO. 7:**

In addition to the General Objections set forth above, Mr. McClendon objects to this request on the grounds that it is overly broad, unduly burdensome, and oppressive. Mr. McClendon also objects to this request to the extent that it calls for production of information protected by the attorney-client privilege, work-product doctrine, or other applicable privilege or privacy right. Specifically, Mr. McClendon objects to the extent the request calls for facts that "undermine" his defenses because it calls for the production of opinion work product. Subject to these objections, Mr. McClendon is not presently aware of facts that undermine his defenses.

Mr. McClendon further objects that this interrogatory is duplicative of Plaintiff's First Set of Interrogatories, Nos. 12 and 14. Defendants continue to meet and confer with Plaintiff regarding search terms for Plaintiff's Request for Production No. 12, relating to the loss causation defense. Defendants have collected 44,154 documents as a result of searches connected to the loss causation defense, including all communications between the agreed-upon Chesapeake custodians and all of the analyst, investor, and media domain names provided by Plaintiff. Those documents have been exported to an external site for final review and production. Review of those documents is ongoing. Defendants are continuing to identify, collect, and review documents responsive to these requests, subject to ongoing discussions with Plaintiff.

Discovery, investigation, and analysis in this case are ongoing. Therefore, Chesapeake reserves its right to update this response with additional information prior to the completion of fact discovery if he identifies additional responsive documents.

Subject to and without waiving the foregoing objections, Mr. McClendon incorporates his response to the Fifth Interrogatory above.

**INTERROGATORY NO. 8:**

State all facts supporting and undermining your contention in your Eighth Affirmative Defense that all claims asserted in the Complaint are barred in whole or in part because the substance of the information that Plaintiff alleges was omitted or misrepresented was disclosed in Chesapeake's public filings, prospectuses and/or other public releases, or was otherwise known to the market and/or the investing community. In doing so, identify by Bates number all disclosures you rely upon for this defense and also specify the date, disseminating party, author, title and specific contents of each such disclosure that you rely upon in purported support of your defense..

**RESPONSE TO INTERROGATORY NO. 8:**

In addition to the General Objections set forth above, Mr. McClendon objects to this request on the grounds that it is overly broad, unduly burdensome, and oppressive. Mr. McClendon also objects to this request to the extent that it calls for production of information protected by the attorney-client privilege, work-product doctrine, or other applicable privilege or privacy right.  Specifically, Mr. McClendon objects to the extent the request calls for facts that "undermine" his defenses because it calls for the production of opinion work product.  Subject to these objections, Mr. McClendon is not presently aware of facts that undermine his defenses.

Discovery, investigation, and analysis in this case are ongoing.  Therefore, Mr. McClendon reserves his right to update this response with additional information prior to the completion of fact discovery if he identifies additional responsive documents.

Subject to and without waiving the foregoing objections, Mr. McClendon refers Plaintiff to its response to the Fifth Interrogatory above.

**INTERROGATORY NO. 9:**

State all facts supporting and undermining your contention in your Tenth Affirmative Defense that you are entitled to the "due diligence" defense under Sections 11 and 12 of the Securities Act of 1933. Without any limitation to your response to the aforementioned request, in responding to the request, state all due diligence activities you performed, the date you performed each activity, and identify by Bates number all documents you rely upon for this defense.

**RESPONSE TO INTERROGATORY NO. 9:**

In addition to the General Objections set forth above, Mr. McClendon objects to this interrogatory because it misstates Mr. McClendon's Tenth Affirmative Defense, which states:

TENTH AFFIRMATIVE DEFENSE

Each of the Individual Chesapeake Defendants is entitled to the "due diligence" defense under Sections 11 and 12 of the Securities Act of 1933 because each had, after reasonable investigation, reasonable ground to believe, and did believe, that the statements included in the Registration Statement were true, and that there was no omission to state a material fact

required to be stated therein or necessary to make any statement not misleading.

Mr. McClendon also objects to this request on the grounds that it is overly broad, unduly burdensome, and oppressive.  Mr. McClendon also objects to this request to the extent that it calls for production of information protected by the attorney-client privilege, work-product doctrine, or other applicable privilege or privacy right.  Specifically, Mr. McClendon objects to the extent the request calls for facts that "undermine" his defenses because it calls for the production of opinion work product.  Subject to these objections, Mr. McClendon is not presently aware of facts that undermine his defenses.

Mr. McClendon objects to this request on the grounds that it is duplicative of Plaintiff's First Set of Interrogatories to the Individual Defendants, Nos. 2 and 3; Plaintiff's Second Set of Interrogatories to the Individual Defendants, No. 4; Plaintiff's First Set of Requests for Production of Documents to Chesapeake, Nos. 1-13 and 15; and Plaintiff's Second Set of Requests for Production of Documents to Chesapeake, Nos. 17-19.  Defendants continue to meet and confer with Plaintiff regarding search terms for Plaintiff's Request for Production Numbers 10 and 15, relating to the due diligence defense.  Defendants have conducted multiple searches returning hundreds of thousands of documents, most of which are likely irrelevant, and have asked Plaintiff to provide limiting terms and/or date ranges to narrow down the search to documents that are more likely to be responsive.  Defendants are continuing to identify, collect, and review documents responsive to these requests, subject to ongoing discussions with Plaintiff.

Discovery, investigation, and analysis in this case are ongoing.  Therefore, Mr. McClendon reserves its right to update this response with additional information prior to the completion of fact discovery if he identifies additional responsive documents.

Subject to and without waiving the foregoing objections, Mr. McClendon incorporates his response to the Fifth Interrogatory above.

## INTERROGATORY NO. 10:

State all facts supporting and undermining your contention in your Thirteenth Affirmative Defense that damages are subject to full or partial reduction based upon the fault of third parties. Without limitation to your response to the aforementioned request, your response should identify these third parties, state the conduct for which they are purportedly at fault, identify who engaged in such conduct, state on what dates the conduct was engaged in, and identify all documents concerning the defense..

## RESPONSE TO INTERROGATORY NO. 10:

In addition to the General Objections set forth above, Mr. McClendon objects to this interrogatory because it misstates Mr. McClendon's Thirteenth Affirmative Defense, which states:

THIRTEENTH AFFIRMATIVE DEFENSE

To the extent Plaintiff is entitled to any damages, such damages are subject to full or partial reduction based on the fault of third parties and the Defendants place the liability of those parties at issue for purposes of determining comparative fault, proportionate liability, or joint and several liability.

Mr. McClendon also objects to this request on the grounds that it is overly broad, unduly burdensome, and oppressive.  Mr. McClendon also objects to this request to the extent that it calls for production of information protected by the attorney-client privilege, work-product doctrine, or other applicable privilege or privacy right.  Specifically, Mr. McClendon objects to the extent the request calls for facts that "undermine" his defenses because it calls for the production of opinion work product.  Subject to these objections, Mr. McClendon is not presently aware of facts that undermine his defenses.

Discovery, investigation, and analysis in this case are ongoing.  Therefore, Mr. McClendon reserves his right to update this response with additional information prior to the completion of fact discovery if he identifies additional responsive documents.

Subject to and without waiving the foregoing objections, Mr. McClendon incorporates his response to the Fifth Interrogatory above.

## INTERROGATORY NO. 11:

State all facts supporting and undermining your contention in your Fourteenth Affirmative Defense that the facts allegedly omitted from the Registration Statement were disclosed in the Registration Statement, and/or were not known or knowable at the time of the Offering, and/or constituted speculative information. In doing so, identify by Bates number all disclosures you rely upon for this defense and also specify the date, disseminating party, author, title, and specific contents of each such disclosure that you rely upon in purported support of your defense.

**<u>RESPONSE TO INTERROGATORY NO. 11</u>:**

In addition to the General Objections set forth above, Mr. McClendon objects to this request on the grounds that it is overly broad, unduly burdensome, and oppressive. Mr. McClendon also objects to this request to the extent that it calls for production of information protected by the attorney-client privilege, work-product doctrine, or other applicable privilege or privacy right. Specifically, Mr. McClendon objects to the extent the request calls for facts that "undermine" his defenses because it calls for the production of opinion work product. Discovery, investigation, and analysis in this case are ongoing. Therefore, Mr. McClendon reserves his right to update this response with additional information prior to the completion of fact discovery if he identifies additional responsive documents.

Subject to and without waiving any of these objections, Mr. McClendon incorporates his response to the Fifth Interrogatory above.

March 29, 2012

ORRICK, HERRINGTON & SUTCLIFFE LLP
ROBERT P. VARIAN (*pro hac vice*)
KENNETH P. HERZINGER (*pro hac vice*)
M. TODD SCOTT (*pro hac vice*)
CHRISTIN J. HILL (*pro hac vice*)

*Counsel for Defendants Chesapeake Energy Corporation, Aubrey K. McClendon, Marcus C. Rowland, Michael A. Johnson, Richard K. Davidson, Frank A. Keating, Breene M. Kerr, Charles T. Maxwell, Merrill A. Miller, Jr., Donald L. Nickles, Frederick B. Whittemore*

     */s/ Kenneth P. Herzinger*
          KENNETH P. HERZINGER

The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:  415.773.5700
Facsimile:  415.773.5759

McAFEE & TAFT
JAMES R. WEBB, OBA #16548
211 North Robinson, Suite 1000
Two Leadership Square, 10th Floor
Oklahoma City, OK  73102
Tel.:  405.552.2246
Fax:  405.235.0439
Email:  Jim.Webb@mcafeetaft.com

## DECLARATION OF SERVICE BY EMAIL

I am a citizen of the United States, over eighteen years old, and not a party to this action.  My place of employment and business address is 405 Howard Street, San Francisco, California 94105.

On March 29, 2012, I served all parties listed below with

**DEFENDANT AUBREY K. MCCLENDON'S AMENDED RESPONSES AND OBJECTIONS TO PLAINTIFF'S THIRD SET OF INTERROGATORIES**

by causing true copies of those documents to be electronically transmitted by means of an email transmission.  The transmissions were reported as complete and without error.

James I. Jaconette
Francis DiGiacco
David Hall
**ROBBINS GELLER RUDMAN & DOWD LLP**
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone:  (631) 367-7100
Facsimile:  (631) 367-1173
Email:  jamesj@rgrdlaw.com
Email:  dhall@rgrdlaw.com
Email:  fdigiacco@rgrdlaw.com

James R. Webb
**MCAFEE & TAFT**
Two Leadership Square
211 N. Robinson, Suite 1000
Oklahoma City, OK 73102-7103
Telephone:  (405) 235-9621
Facsimile:  (405) 235-0439
Email:  jim.webb@mcafeetaft.com

Alyson M. Weiss
Jodi Sarowitz
**LOEB & LOEB LLP**
345 Park Avenue
New York, NY 10154
Telephone:  (212) 407-4000
Facsimile:  (212) 407-4990
Email:  aweiss@loeb.com
Email:  jsarowitz@loeb.com

Jack G. Fruchter
**ABRAHAM, FRUCHTER & TWERSKY, LLP**
One Pennsylvania Plaza, Suite 2805
New York, NY 10119
Telephone:  (212) 279-5050
Facsimile:  (212) 279-3655
Email:  jfruchter@aftlaw.com

Drew Neville
Ryan Wilson
**HARTZOG CONGER CASON & NEVILLE**
201 Robert S. Kerr Avenue
Oklahoma City, OK 73102
Telephone:  (405) 235-7000
Facsimile:  (405) 996-3403
Email:  dneville@hartzoglaw.com
Email:  rwilson@hartzoglaw.com

Michael Betts
Michael Felty
**LYTLE SOULE & CURLEE, P.C.**
119 N. Robinson, Suite 1200
Oklahoma City, OK 73102
Telephone:  (405) 235-7471
Facsimile:  (405) 232-3852
Email:  betts@lytlesoule.com
Email:  felty@lytlesoule.com

Executed on March 29, 2012, at San Francisco, California.

I declare under penalty of perjury that the foregoing is true and correct.

_/s/ Christin J. Hill_

Christin J. Hill
(California Bar No. 247522)
Admitted _Pro Hac Vice_

ORRICK, HERRINGTON &
SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105
Telephone: (415)773-5700
Facsimile: (415)773-5759
Email: chill@orrick.com

_Attorneys for Defendants Chesapeake_
_Energy Corporation, Aubrey K._
_McClendon, Marcus C. Rowland,_
_Michael A. Johnson, Richard K._
_Davidson, Frank A. Keating, Breen M._
_Kerr, Charles T. Maxwell, Merrill A._
_Miller, Jr., Donald L. Nickles, and_
_Frederick B. Whittemore_
