UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

UNITED FOOD AND COMMERCIAL
WORKERS UNION,
Individually and On Behalf of All Others
Similarly Situated,

        Plaintiff,

      -against-

CHESAPEAKE ENERGY CORPORATION,
AUBREY K. MCCLENDON, MARCUS C.
ROWLAND, MICHAEL A. JOHNSON,
RICHARD K. DAVIDSON, FRANK A.
KEATING, BREENE M. KERR, CHARLES T.
MAXWELL, MERRILL A. MILLER, JR.,
DONALD L. NICKLES, FREDERICK B.
WHITTEMORE, UBS INVESTMENT BANK,
ABN AMRO, BANC OF AMERICA
SECURITIES LLC and WELLS FARGO
SECURITIES,

        Defendants.

**Civil Action No. 5:09-CV-1114-D**

**CLASS ACTION**

**CHESAPEAKE ENERGY
CORPORATION AND INDIVIDUAL
DEFENDANTS' OPPOSITION TO
LEAD PLAINTIFF'S MOTION TO
COMPEL REGARDING THE
COURT'S JANUARY 6, 2012
ORDER AND DOCUMENTS
WITHHELD AS PROTECTED BY
THE ATTORNEY CLIENT
PRIVILEGE [DKT. NO. 222]**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND ...........................................2

I.    BACKGROUND RELEVANT TO MR. MCCLENDON'S COMPLIANCE WITH THE COURT'S ORDER ........................................................................2

II.    BACKGROUND RELEVANT TO THE CHESAPEAKE DEFENDANTS' ASSERTION OF ATTORNEY-CLIENT PRIVILEGE .......................................4

ARGUMENT ........................................................................................................5

III.    MR. MCCLENDON HAS PROPERLY REDACTED PRIVATE AND NON-RESPONSIVE HIGHLY SENSITIVE FINANCIAL INFORMATION ...............................................................................................5

    A.    Mr. McClendon Has Complied With the Letter and the Spirit of the Court's Order and Controlling Law ............................................................6

    B.    Redaction of Mr. McClendon's Confidential Financial Information Is Supported by the Federal Rules, Case Law, and Plaintiff's Own Practice in This Case ....................................................................................8

    C.    Plaintiff's Motion to Compel Mr. McClendon to Provide Further Responses to Interrogatory Nos. 1(h) and (k), and 2 Should be Denied ...............................................................................................................10

IV.    THE CHESAPEAKE DEFENDANTS HAVE NOT ASSERTED A RELIANCE ON ADVICE OF COUNSEL DEFENSE, AND HAVE PROPERLY ASSERTED THE ATTORNEY-CLIENT PRIVILEGE ................11

    A.    The Chesapeake Defendants Properly Asserted and Established That The Documents That Were Withheld are Protected by the Attorney-Client Privilege ....................................................................................................12

    B.    The Chesapeake Defendants Have Not Waived Privilege by Asserting Advice of Counsel ...................................................................................13

    C.    Chesapeake's Draft Press Releases and SEC Filings Are Protected by the Attorney-Client Privilege ..............................................................16

CONCLUSION ....................................................................................................18

OHSUSA:750236762.1

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Beauchem v. Rockford Prod. Corp.*,
  Case No. 01cv50134, 2002 WL 1870050 (N.D. Ill. Aug. 13, 2002).......................................9

*Cardtoons, L.C. v. Major League Baseball Players Assoc.*,
  199 F.R.D. 677 (N.D. Okla. 2001)...................................................................................12

*Coregis Ins. Co. v. Law Offices of Carole F. Kafrissen, P.C.*,
  57 F. App'x 58 (3d Cir. 2003) ........................................................................................14

*Frontier Refining, Inc. v. Gorman-Rupp Co., Inc.*,
  136 F.3d 695 (10th Cir. 1998) ........................................................................................16

*Gabriel Capital L.P. v. Natwest Fin., Inc.*,
  No. 99 Civ. 10488, 2001 WL 1132050 (S.D.N.Y. Sept. 21, 2001) ...............................15

*Herd ex rel. Herd v. Asarco Inc.*,
  01-CV-891-H M, 2002 WL 34584902 (N.D. Okla. Apr. 26, 2002).............................17

*Hoagland v. Rockin' R Ranch & Lodge Guest Operations, Inc.*,
  Case No. 10-cv-478-TC-PMW, 2011 U.S. Dist. LEXIS 48472 (C.D. Utah May
  5, 2011).........................................................................................................................9

*Holland v. Island Creek Corp.*,
  885 F. Supp. 4 (D. D.C. 1995)........................................................................................16

*Horton v. United States*,
  204 F.R.D. 670 (D. Colo. 2002) .....................................................................................12

*In re Air Crash Disaster at Sioux City, Iowa on July 19, 1989*,
  133 F.R.D. 515 (N.D. Ill. 1990) .....................................................................................16

*In re Lott*,
  424 F.3d 446 (6th Cir. 2005) .....................................................................................14, 15

*In re Qwest Communs. Int'l, Inc.*,
  450 F.3d 1179 (10th Cir. 2006).......................................................................................17

*In re WorldCom, Inc. Sec. Litig.*,
  346 F. Supp. 2d 628 (S.D.N.Y. 2004) ........................................................................13, 14

OHSUSA:750236762.1

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Klitzman, Klitzman and Gallagher v. Krut*,
744 F.2d 955 (3d Cir. 1984) ...................................................................................11

*Laven v. Flanagan*,
695 F. Supp. 800 (D. N.J. 1988) .............................................................................14

*Lindley v. Life Investors Ins. Co. of America*,
267 F.R.D. 382 (N.D. Okla. 2010) ..........................................................................17

*Lorenz v. Valley Forge Ins. Co.*,
815 F.2d 1095 (7th Cir. 1987) ................................................................................15

*Marrese v. American Acad. of Orthopaedic Surgeons*,
726 F.2d 1150 (7th Cir. 1984) (*en banc*), *rev'd on other grounds*, 470 U.S. 373
(1985)..........................................................................................................................9

*Metzger v. American Fidelity Assur. Co.*,
Case No. CIV-05-1387-M, 2007 WL 3274922 (W.D. Okla. Oct. 23, 2007) ...............12

*Natta v. Hogan*,
392 F.2d 686 (10th Cir. 1968) ................................................................................17

*Picard Chem. Inc. Profit Sharing Plan v. Perrigo Co.*,
No. 1:95-CV-141, 1998 WL 513091 (W.D. Mich. June 15, 1998) ...............................14

*Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*,
32 F.3d 851 (3d Cir. 1994).......................................................................................15

*Roth v. Aon Corp.*,
254 F.R.D. 538 (N.D. Ill. 2009) ..............................................................................16

*Schiller v. City of New York*,
Case No. 04-cv-7921, 2006 WL 3592547 (S.D.N.Y. Dec. 7, 2006) ..............................9

*Seattle Times Co. v. Rhinehart*,
467 U.S. 20 (1984)......................................................................................................7, 8

*Spano v. Boeing*,
Case No. 06-cv-00743, 2008 WL 1774460 (S.D. Ill. Apr. 16, 2008) ............................9

*United States v. Willis*,
565 F. Supp. 1186 (S.D. Iowa 1983) ........................................................................16

OHSUSA:750236762.1

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Upjohn Co. v. U.S.*,
   449 U.S. 383 (1981)..................................................................................................11

**STATUTES**

15 U.S.C. § 77k(b)(3)(A) ....................................................................................13, 14

15 U.S.C. § 77k(b)(3)(C) ....................................................................................13, 14

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26(b)(5)(A) ......................................................................................12

Fed. R. Civ. P. 26(c) ..................................................................................................7

OHSUSA:750236762.1

Defendants Chesapeake Energy Corporation, Aubrey K. McClendon, Marcus C. Rowland, Michael A. Johnson, Richard K. Davidson, Frank A. Keating, Breen M. Kerr, Charles T. Maxwell, Merrill A. Miller, Jr., Donald L. Nickles, and Frederick B. Whittemore (collectively the "Chesapeake Defendants"), respectfully submit this brief in opposition to Lead Plaintiff's Motion to Compel regarding compliance with the Court's January 6, 2012 Order and documents withheld as protected by attorney-client privilege [Dkt. No. 222].

## INTRODUCTION

Plaintiff seeks an order compelling discovery above and beyond the scope of the Court's January 6, 2012 Order and production of documents that are protected by the attorney-client privilege. The Motion should be denied in its entirety because it seeks production of documents from Mr. McClendon that are outside the lines drawn by the Court, highly confidential, irrelevant, and, in the case of the documents sought from all of the Chesapeake Defendants, privileged.

In compliance with the Court's January 6, 2012 Order, Defendant Aubrey McClendon produced 436 pages of documents that show his "liquidity or financial ability, as of July 9, 2008." Plaintiff now contends that this document production is deficient because Mr. McClendon redacted from the documents highly sensitive financial information that is not responsive to the request or required by the Court's order. To the contrary, Mr. McClendon's redactions are supported by the Court's order, the Federal Rules and established case law.

Likewise, the Chesapeake Defendants have properly asserted and withheld or redacted documents based on the attorney-client privilege where appropriate.  Contrary to Plaintiff's assertions, the Chesapeake Defendants have not waived attorney-client privilege or asserted an advice of counsel defense.  Rather, the Chesapeake Defendants have carefully and consistently guarded privileged communications in accordance with the Federal Rules of Civil Procedure.

## FACTUAL AND PROCEDURAL BACKGROUND

I.    **BACKGROUND RELEVANT TO MR. MCCLENDON'S COMPLIANCE WITH THE COURT'S ORDER**

In October 2011, Plaintiff moved to compel, among other things, Aubrey McClendon's highly sensitive and confidential personal financial documents, including all of his tax returns, bank account records, brokerage account records, personal investments, personal assets and income, loan applications and insurance and annuity policies that cover him and/or his family.  Dkt. No. 128.  In opposition to Plaintiff's motion, Chesapeake and Mr. McClendon argued that the requested information involves personal financial and other sensitive private information which is beyond the scope of permissible discovery.  Dkt. No. 133 at 11-16.  The Court largely sustained Mr. McClendon's objections, emphasizing that:

> …in addition to limitations on discovery based on relevance to claims and defenses in the litigation, Fed. R. Civ. P. 26(c) empowers the Court to forbid or limit discovery to protect a party from annoyance, embarrassment, oppression, or undue burden or expense.  The rule serves in part to protect a party's privacy interests. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 35 n.21 (1984).  With these limitations in mind, the Court

> concludes that the request in question is excessive in its
> scope.

January 6, 2012 Order, Dkt. No. 167 at 8 (hereinafter "January 6, 2012 Order").

Accordingly, the order directed that discovery would be limited to only documents covered by Plaintiff's First Request for Production to Mr. McClendon No. 2, subparts (a) and (d), which seek "bank, brokerage, or other financial account statements" and "financial statements identifying [Mr. McClendon's] assets, liabilities, or income" as of July 9, 2008.  *Id.*; *see also* Declaration of David W. Hall In Support of Plaintiff's Motion to Compel ("Hall Decl."), Ex. 1 (Dkt. No. 223-1).

The Court denied Plaintiff's request in all other respects.  Specifically, the Court denied Plaintiff's request to compel the information sought in subparts (b), (c), (e), (f), (g), and (h) of Request for Production No. 2, which seek production of Mr. McClendon's tax returns, information about his personal investments, his loan applications, and his insurance and annuity policies.  Most important, the Court specifically ordered that discovery may only be had "**as of the date set forth in the request**" – July 9, 2008. January 6, 2012 Order at 8 (emphasis added).

The Court clearly recognized that disclosure of the additional information Plaintiff requested is irrelevant to the claims asserted in the Amended Complaint because the issue is whether Mr. McClendon had the liquidity or financial ability as of July 9, 2008 – the date of the Offering – to satisfy the margin calls that resulted in the sale of his stock as of that date, and production of such materials would seriously violate Mr. McClendon's privacy interests.  *Id.*

In compliance with the Court's Order, on February 6, 2012, Mr. McClendon produced 436 pages of bank, brokerage and trading records.  The production also included financial statements reflecting his assets, liabilities, and income as of July 2008.  These documents precisely respond to Plaintiff's Request for Production No. 2 subparts (a) and (d), and provide a comprehensive picture of Mr. McClendon's financial position and liquidity as of July 9, 2008.  The documents are redacted only to protect account numbers, addresses, daily account activity and specific investment activity, which is not relevant to Plaintiff's claims, not specifically requested by Plaintiff, and **not necessary to show Mr. McClendon's financial position as of July 9, 2008**.

## II.     BACKGROUND RELEVANT TO THE CHESAPEAKE DEFENDANTS' ASSERTION OF ATTORNEY-CLIENT PRIVILEGE

Following the completion of the Chesapeake Defendants' document production, Defendants provided Plaintiff with a detailed privilege log and redaction log.  Thereafter, through a series of telephonic conferences and letter exchanges, the Chesapeake Defendants made an additional document production by redacting the privileged material from documents or producing the portions of documents that were not privileged, and also produced a more granular privilege log that logs each email in a chain of multiple emails that contain privileged information.  *See* Declaration of Christin Hill in Support of Chesapeake Energy Corporation And Individual Defendants' Opposition to Lead Plaintiff's Motion to Compel Regarding the Court's January 6, 2012 Order and Documents Withheld as Protected by the Attorney Client Privilege ("Hill Decl."), Exs. 1-2; *see also* Hall Decl. Ex. 7.

During the meet and confer process, Plaintiff also requested that Chesapeake produce other documents identified on the privilege log, including certain draft SEC filings, draft press releases, and draft roadshow slides.  *See* Hall Decl., Ex. 6.  The Chesapeake Defendants declined this request, and directed Plaintiff to numerous cases showing that these documents were properly withheld on the basis of attorney-client privilege.  *See* Hill Decl., Ex. 1.

Finally, Plaintiff asserted that Chesapeake has waived the attorney-client privilege as to all documents concerning the due diligence performed for the Offering by raising the affirmative defense of reliance on counsel.  As a review of the pleadings quickly demonstrates, the Chesapeake Defendants have not asserted the reliance on counsel defense, and do not intend to assert in this litigation or at trial.

**ARGUMENT**

### III.   MR. MCCLENDON HAS PROPERLY REDACTED PRIVATE AND NON-RESPONSIVE HIGHLY SENSITIVE FINANCIAL INFORMATION

This Court has already struck down Plaintiff's unbridled efforts to gain unfettered access to Mr. McClendon's personal and highly confidential financial information.  Indeed, the Court recognized that the request in question goes well beyond information reasonably related to Plaintiff's allegation "that at the time of the offering Defendant McClendon 'lacked the cash' – *i.e.*, liquid assets – necessary to satisfy his margin loans."  January 6, 2012 Order at 8.  Accordingly, the Court ordered a very narrow production on a very narrow document request that was itself specifically keyed to "July 9, 2008.".  Mr. McClendon produced exactly that information.  Plaintiff now reprises its attempt to

obtain confidential and irrelevant information that was neither part of the document request at issue nor required by the Court's order.  Plaintiff's efforts should be denied again.

A.    **Mr. McClendon Has Complied With the Letter and the Spirit of the Court's Order and Controlling Law**

In compliance with the Court's January 6, 2012 Order, Mr. McClendon produced his trading records and personal financial statements, which show his liquid assets as of the time of the July 9, 2008 Offering.  These documents provide a comprehensive picture of Mr. McClendon's financial position and liquidity **as of July 9, 2008**.   The redactions relate only to Mr. McClendon's daily account activity and specific investment activity.

Plaintiff's only attempt to explain how production of this sort of granular and highly confidential trading information could possibly be relevant to the claims and defenses in this case is that it "hampers Lead Plaintiff's ability to piece together relevant contextual information."  Motion at 9.  Information regarding the minutia and details of individual transactions, positions, trades and outcomes is not necessary to assess Mr. McClendon's liquid assets as of July 9, 2008 or his ability to satisfy margin calls.[1]  For good reason, the Court rejected Plaintiff's attempt to force production of such individualized and irrelevant details when it rejected Plaintiff's attempt to force production of the information sought in subparts (b), (c), (e), (f), (g), and (h) of Request for Production No. 2, which sought, *inter alia*, "documents in relation to any investments

---

[1] The unredacted copies of Mr. McClendon's records provided to the Court for *in camera* review show that this information is both irrelevant and sensitive personal and confidential financial information.

you made, held, or owned an interest in."

Moreover, Plaintiff has not even attempted to explain how the value of such "contextual information" could outweigh Mr. McClendon's personal privacy rights. As the Court previously recognized, nondisclosure of such information is vital to protect Mr. McClendon's "privacy interests" and to avoid unnecessary "annoyance, embarrassment, [and] oppression." January 6, 2012 Order at 8.

As this Court held, Federal Rule of Civil Procedure 26(c) not only places limitations on discovery based on relevance, it also "serves in part to protect a party's privacy interests." January 6, 2012 Order at 8 (*citing Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 35 n.21 (1984)). In *Seattle Times*, the Supreme Court recognized that discovery abuse "is not limited to matters of delay and expense; discovery also may seriously implicate privacy interests of litigants and third-parties," and "[a]lthough [Rule 26(c)] contains no specific reference to privacy or to other rights or interests that may be implicated, such matters are implicit in the broad purpose and language of the Rule." *Seattle Times*, 467 U.S. at 34, 35 n.21. The Supreme Court further held that "[t]here is an opportunity, therefore, for litigants to obtain – incidentally or purposefully – information that not only is irrelevant, but if publicly released could be damaging to reputation and privacy. The government clearly has a substantial interest in preventing this sort of abuse of its processes." *Id*. at 35.

In addition to being irrelevant to a determination of his financial position on July 9, 2008, the disclosure of the details regarding each trade in Mr. McClendon's personal trading records clearly would be a damaging invasion of his personal privacy. The

redacted trading records contain private and highly sensitive personal financial information related to confidential financial dealings.  Production of such irrelevant and highly confidential information would all but ensure its public dissemination because third parties – including the media – could ultimately gain access to the documents produced.  Thus, the redaction of this information is the only way to provide the appropriate protection to prevent its public dissemination.

Indeed, the Court not only instructed that the production of his personal financial information be limited to two narrow categories of documents, but ordered that these documents shall be entitled to further productions above those outlined in the Protective Order.  *Id.* at 8-9.  Yet, even such heightened protection under the Court's Order and Protective Order is not adequate protection against public disclosure because it will not ensure that the information will not be accessed by the public and the press.  Once produced in unredacted form, Plaintiff will surely use the documents in the litigation at depositions and trial and share them with various experts and consultants, which will be damaging to Mr. McClendon.  *See* Chesapeake Defendants' Opposition to Lead Plaintiff's Motion For Leave to File Documents Under Seal and Alternative Proposal, (Dkt. No. 210).

**B.      Redaction of Mr. McClendon's Confidential Financial Information Is Supported by the Federal Rules, Case Law, and Plaintiff's Own Practice in This Case**

Plaintiff's contention that Mr. McClendon is obligated to produce unredacted versions of his highly confidential financial records is directly contrary to the Federal Rules of Civil Procedure, case law from numerous federal courts, and the practice

established by Plaintiff in this very case.

Contrary to Plaintiff's suggestion that the law is uniformly against redactions, numerous courts have approved of the redaction of irrelevant information from otherwise responsive documents and have squarely rejected the argument that such a practice is prohibited by the Federal Rules of Civil Procedure.  For example, the court in *Spano v. Boeing*, Case No. 06-cv-743, 2008 WL 1774460 at *2 (S.D. Ill. Apr. 16, 2008), held: "[t]he Court also rejects Plaintiffs' argument that redaction is an improper method of challenging the relevance of a document.  Although not specifically addressed in the Rule, other courts have found redaction appropriate where the information redacted was not relevant to the issues in the case." (internal citations omitted) *citing Beauchem v. Rockford Prod. Corp.*, Case No. 01cv50134, 2002 WL 1870050, at *2 (N.D. Ill. Aug. 13, 2002); *Schiller v. City of New York*, Case No. 04cv1921, 2006 WL 3592547, at *7 (S.D.N.Y. Dec. 7, 2006).

The justification for the redactions in this case is particularly strong because Mr. McClendon has redacted information not merely because it is non-responsive or irrelevant, but because it involves information that is highly confidential and personal. Numerous courts have held that it is appropriate to redact extraneous confidential information.  *See e.g., Marrese v. American Acad. of Orthopaedic Surgeons*, 726 F.2d 1150, 1160 (7th Cir. 1984) (*en banc*) (describing means by which immaterial confidential information could be protected, including *in camera* review of documents and redaction of the confidential information pending a showing of relevance), *rev'd on other grounds*, 470 U.S. 373 (1985); *Hoagland v. Rockin' R Ranch & Lodge Guest Operations, Inc.*,

Case No. 10-cv-478-TC-PMW, 2011 U.S. Dist. LEXIS 48472 at *5-6 (C.D. Utah May 5, 2011) (stating that produced information which contains sensitive or confidential information may be protected by a stipulation to redact information or a protective order).

Moreover, Plaintiff itself acknowledged the appropriateness of redacting such financial information when it produced heavily redacted trading records for Safron Capital Corporation and Lead Plaintiff United Food and Commercial Workers Union.  In Plaintiff's objections to the Chesapeake Defendants' document requests for Safron and UFCW's trading records, Plaintiff cited "Plaintiff's right to privacy" as the grounds for such redactions and refused to produce the underlying trading data.  Hill Decl., Ex. 3 at 7-29 and Ex. 4 at 7-30.  When counsel for the Chesapeake Defendants asked why Plaintiff so heavily redacted the trading records, Plaintiff's counsel stated that the information was irrelevant and private.  Hill Decl. ¶ 6.  The reasons supporting redaction of Mr. McClendon's highly personal, confidential and irrelevant financial information are **far** more compelling.

### C.   Plaintiff's Motion to Compel Mr. McClendon to Provide Further Responses to Interrogatory Nos. 1(h) and (k), and 2 Should be Denied

Plaintiff admits that it moved for responses to the interrogatories at issue here in connection with its prior motion to compel.  *See* Motion at 4, n.3 and 10.  That is decisive because the Court issued a comprehensive order that specifically addressed exactly these interrogatory requests, and held that "discovery may be had regarding documents covered by Request No. 2, subparts (a) and (d) **only**."  January 6, 2012 Order at 8 (emphasis

added).[2]

Plaintiff is not entitled to run roughshod over the Order, and has made no attempt

to satisfy the rigorous requirements of a motion for reconsideration.  Further, as Plaintiff

concedes these interrogatories are nearly identical to Plaintiff's Request for Production of

Documents No. 2(a) and (d).  *See* Motion at 10.  Thus, the Court should deny Plaintiff's

motion to compel responses to these interrogatories because they are not only covered by

the Court's January 6, 2012 Order but are also duplicative and unnecessary and could

only be designed to cause annoyance, embarrassment and oppression.

## IV.    THE CHESAPEAKE DEFENDANTS HAVE NOT ASSERTED A RELIANCE ON ADVICE OF COUNSEL DEFENSE, AND HAVE PROPERLY ASSERTED THE ATTORNEY-CLIENT PRIVILEGE

Plaintiff's argument that the Chesapeake Defendants have improperly withheld

privileged documents is based on the erroneous premise that the Chesapeake Defendants

have asserted reliance on the advice of counsel as a defense in this case.  No such defense

has been asserted, and the Chesapeake Defendants have taken appropriate measures to

protect privileged communications.

"The attorney-client privilege is the oldest of the privileges for confidential

communications known to the common law."  *Upjohn Co. v. U.S.*, 449 U.S. 383, 389

(1981).  Further, the attorney-client privilege "is so sacred and compellingly important

---

[2] Despite the Court's clear order that Plaintiff is not entitled to discovery regarding "any investment [Mr. McClendon] made, held, or owned an interest in" (Plaintiff's First Request for Production of Documents No. 2(c) (Hall Decl., Ex. 1) and January 6, 2012 Order at 8), and "discovery may be had regarding documents covered by Request No. 2, subparts (a) and (d) only" (January 6, 2012 Order at 8), Plaintiff has sought all of Mr. McClendon's trading records for the period June 1, 2008 through November 30, 2008 from Goldman Sachs by means of a third-party subpoena.  *See* Hill Decl., Ex. 5 at 8.

that the courts must, within their limits, guard it jealously." *Klitzman, Klitzman and Gallagher v. Krut*, 744 F.2d 955, 960 (3d Cir. 1984) (citations omitted). The attorney-client privilege can be waived only if a party places privileged information directly in issue, for example via the filing of a lawsuit or assertion of a reliance on advice of counsel defense. *See, e.g., Cardtoons, L.C. v. Major League Baseball Players Assoc.*, 199 F.R.D. 677, 681 (N.D. Okla. 2001) (citations omitted). As illustrated below, the Chesapeake Defendants properly asserted the attorney-client privilege over documents that they withheld from production, and the conditions for waiver of the privilege are not present here.

A.    **The Chesapeake Defendants Properly Asserted and Established That The Documents That Were Withheld are Protected by the Attorney-Client Privilege**

Federal Rule of Civil Procedure 26(b)(5)(A) provides that a party may withhold information from discovery on the grounds of privilege if the party expressly asserts the privilege, and describes the "nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing itself privileged or protected, will enable other parties to assess the claim." Courts have held that the production of a privilege log satisfies the requirements of Rule 26(b)(5)(A). *See, e.g., Metzger v. American Fidelity Assur. Co.*, Case No. CIV-05-1387-M, 2007 WL 3274922, at *1 (W.D. Okla. Oct. 23, 2007); *Horton v. United States*, 204 F.R.D. 670, 673 (D. Colo. 2002).

Furthermore, the Advisory Committee Notes to the 1993 Amendments to Rule 26 provide that there is no required format for a privilege log, and that a detailed log "may

be unduly burdensome when voluminous documents are claimed to be privileged or protected."  Advisory Comm. Notes to Rule 26, 1993 Amendments, Subdivision (b). Here, the Chesapeake Defendants produced a detailed privilege log to Plaintiff, which at Plaintiff's request, not only logs and describes the privilege over each document withheld on the basis of privilege, but logs each email within an email chain as multiple entries and described the privilege asserted for each entry despite the burden of this undertaking.

### B.    The Chesapeake Defendants Have Not Waived Privilege by Asserting Advice of Counsel

The Chesapeake Defendants' assertion of the due diligence defense plainly does not trigger a waiver of the attorney-client privilege.  Indeed, there is no requirement that a defendant rely on communications with counsel to demonstrate a due diligence defense, as it is the actions of the defendant, not its counsel, that determine the reasonableness of the defendants' investigation.  *See* 15 U.S.C. § 77k(b)(3)(A); *In re WorldCom, Inc. Sec. Litig.*, 346 F. Supp. 2d 628, 662 (S.D.N.Y. 2004) (for portions of the registration statement not made on the authority of an expert, "a defendant will not be liable upon a showing that he had *after reasonable investigation, reasonable ground to believe and did believe*, at the time such part of the registration statement became effective, *that the statements therein were true* and that there was no omission to state a material fact required to be stated therein not necessary to make the statements not misleading.") (*citing* 15 U.S.C. § 77k(b)(3)(A)) (emphasis in original).[3]

---

[3] Plaintiff appears to be confusing the due diligence defense with the reliance defense under 15 U.S.C. § 77k(b)(3)(C).  For "expertised" portions of the registration statement, a non-expert defendant "will not be liable if he demonstrates that *he had no reasonable*

Courts have consistently ruled that defendants establish the due diligence defense through their own conduct, not by the reliance on advice of counsel defense.  *See, e.g.*, *Laven v. Flanagan*, 695 F. Supp. 800, 811-12 (D. N.J. 1988) (granting summary judgment in favor of defendant directors who pursued a reasonable investigation); *Picard Chem. Inc. Profit Sharing Plan v. Perrigo Co.*, No. 1:95-CV-141, 1998 WL 513091, at *15-16 (W.D. Mich. June 15, 1998) (granting summary judgment based on due diligence defense, while recognizing that defendants had retained counsel in connection with the offerings).

A party's reliance on the advice of counsel is not implicated so long as that party does not attempt to disprove a claim, or support a defense, by relying on and offering evidence of legal advice.  *See In re Lott*, 424 F.3d 446, 454 (6th Cir. 2005) (reversing order compelling production of privileged materials when defendant had not put at issue attorney's advice and noting that, "while the sword stays sheathed, the privilege stands").  "It is important to cabin the implied waiver of privileges to instances where the holder of the privilege has taken some affirmative step to place the content of the confidential

---

*ground to believe and did not believe*, at the time such part of the registration statement became effective, *that the statements* therein *were untrue* or that there was an omission to state a material fact required to be stated therein or necessary to make the statements therein not misleading."  *WorldCom*, 346 F. Supp. 2d at 663 (*citing* 15 U.S.C § 77k(b)(3)(C)) (emphasis in original).  Courts have labeled this the "reliance defense." *Id*.  The Chesapeake Defendants have asserted the due diligence defense, not the reliance defense, in their Answer.  The language in the Chesapeake Defendants' Tenth Affirmative Defense clearly tracks the language in 15 U.S.C. § 77k(b)(3)(A) not 15 U.S.C. § 77k(b)(3)(C).  *See* Chesapeake Defendants' Answer at 14 (Dkt. No. 80).  Moreover, even if a defendant seeks to establish the reliance defense, the attorney-client privilege is not implicated unless the defense affirmatively seeks to rely on an attorney as an "expert" with respect to the registration statement and introduces attorney-client advice in support of that defense.  *See* cases *infra* at pages 14-16.

communication into the litigation." *Id*. at 455; *see also Coregis Ins. Co. v. Law Offices of Carole F. Kafrissen, P.C.*, 57 F. App'x 58, 60 n.3 (3d Cir. 2003).

Indeed, courts have consistently held that in order to affect a waiver, a party must voluntarily assert his reliance on the advice of counsel as an element of his defense. *See, e.g., In re Lott*, 424 F.3d at 455; *Lorenz v. Valley Forge Ins. Co.*, 815 F.2d 1095, 1098 (7th Cir. 1987). "Advice is not in issue merely because it is relevant, and does not necessarily become in issue merely because the attorney's advice might affect the client's state of mind in a relevant manner." *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir. 1994). Thus, in order to waive privilege, a party must take some affirmative step to put in issue privileged communications with counsel, such as asserting reliance on advice of counsel during a deposition. *See Gabriel Capital L.P. v. Natwest Fin., Inc.*, No. 99 Civ. 10488, 2001 WL 1132050, at *2 n.4 (S.D.N.Y. Sept. 21, 2001) ("employees frequently asserted an advice-of-counsel defense when deposed.").

Contrary to Plaintiff's assertions, the Chesapeake Defendants have not put at issue any communications with their counsel, let alone affirmatively asserted that such communications constitute an element of their due diligence defense. Moreover, had the Plaintiff complied with the Local Rules and informed the Chesapeake Defendants that it intended to bring this motion on these grounds, they would have made it crystal clear to Plaintiff that they have not and do not intend to assert any type of reliance on counsel defense in connection with their due diligence, nor do they intend to call any attorney witnesses to testify at trial or to introduce any attorney-client communications as evidence in the litigation or at trial.

The cases cited by Plaintiff in support of its position do not change the result. Plaintiff cites *Frontier Refining, Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 700 (10th Cir. 1998), for the proposition that "interjecting reliance on advice of counsel 'constitute[s] a waiver of the attorney-client Privilege.'"  Motion at 12.  However, the full quote actually reads, "We recognize that reliance upon a defense of advice of counsel has, in some circumstances, been held to constitute a waiver of the attorney-client privilege.  In this case, however, appellees did not rely on advice of counsel as a defense." *Frontier*, 136 F.3d at 700 (citations omitted).  The same is true here.  Because the Chesapeake Defendants are not relying on advice of counsel as a defense, there is no waiver.[4]

### C.  Chesapeake's Draft Press Releases and SEC Filings Are Protected by the Attorney-Client Privilege

The Chesapeake Defendants properly withheld draft press releases and SEC filings as protected by the attorney-client privilege.  Numerous courts have held that attorney-client privilege and work product protections attach to drafts of documents, regardless of whether the final versions of those documents are later made public.  *See e.g., Roth v. Aon Corp.*, 254 F.R.D. 538, 541 (N.D. Ill. 2009) ("even when a final product is disclosed to the public, the underlying privilege attached to drafts of the final product remains intact"); *see also, Holland v. Island Creek Corp.*, 885 F. Supp. 4, 8 (D. D.C. 1995); *In re*

---

[4] The other cases relied upon by Plaintiff stand for the unremarkable proposition that a party may not affirmatively put at issue the advice of counsel to prove an element of its defense while at the same time relying on the protections of the privilege to shield those communications from discovery.  *See* Motion at 12-13.  The Chesapeake Defendants do not dispute this principle.

*Air Crash Disaster at Sioux City, Iowa on July 19, 1989*, 133 F.R.D. 515, 518 (N.D. Ill. 1990) (citing cases); *United States v. Willis*, 565 F. Supp. 1186, 1193 (S.D. Iowa 1983). Indeed, as explained by the Northern District of Oklahoma, "[t]he drafting process is often the type of communication at the core of the attorney-client privilege.  It often involves deciding what positions to assert and what information should or should not be revealed along with the reasons for these decisions."  *Herd ex rel. Herd v. Asarco Inc*., 01-CV-891-H M, 2002 WL 34584902 at *2 (N.D. Okla. Apr. 26, 2002); *see also Natta v. Hogan*, 392 F.2d 686, 692 (10th Cir. 1968) ("The situation is like that where a client gives general information to his lawyer so that the lawyer may prepare a complaint in any ordinary civil action. The fact that some of the information is thus publicly disclosed does not waive the privilege.").

The cases Plaintiff cites in support of its argument are inapposite.  In *In re Qwest Communs. Int'l, Inc*., 450 F.3d 1179, 1185 (10th Cir. 2006), the company claimed privilege over drafts that had previously been produced to the Department of Justice and the Securities and Exchange Commission.  *Id*. at 1181-82.  Those drafts were not privileged as they had been revealed to an adverse party.  Here, only the final versions of the documents were made public.  The drafts were never shared with an adverse party.  Indeed, as the court recognized in *Lindley v. Life Investors Ins. Co. of America*, 267 F.R.D. 382, 386 (N.D. Okla. 2010), "privilege is waived only as to those portions of the preliminary drafts ultimately revealed to third-parties."  Accordingly, the draft versions of documents that were not made public at any time are clearly protected by the attorney-client and work product privileges.

## CONCLUSION

For the reasons stated above, the Chesapeake Defendants request that the Court deny Plaintiff's motion in its entirety.

Dated:  April 23, 2012

ROBERT P. VARIAN
KENNETH P. HERZINGER
M. TODD SCOTT
CHRISTIN J. HILL

Orrick, Herrington & Sutcliffe LLP

_____*/s/ Kenneth P. Herzinger*_____
Kenneth P. Herzinger
Admitted *Pro Hac Vice,*

*Attorneys for Defendants Chesapeake Energy Corporation, Aubrey K. McClendon, Marcus C. Rowland, Michael A. Johnson, Richard K. Davidson, Frank A. Keating, Breen M. Kerr, Charles T. Maxwell, Merrill A. Miller, Jr., Donald L. Nickles, and Frederick B. Whittemore*

ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone: (415) 773-5700
Facsimile: (415) 773-5759
Email: kherzinger@orrick.com

## CERTIFICATE OF SERVICE

I, Christin J. Hill, hereby certify that on the 23rd day of April, 2012, I electronically transmitted the attached to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

- James I. Jaconette
  jamesj@rgrdlaw.com, dhall@rgrdlaw.com, e_filesd@rgrdlaw.com, karen@rgrdlaw.com

- Francis A. DiGiacco
  fdigiacco@rgrdlaw.com

- David W. Hall
  dhall@rgrdlaw.com

- Michael C. Felty
  felty@lytlesoulde.com, fisher@lytlesoule.com, weis@lytlesoule.com

- Michael A. Betts
  betts@lytlesoule.com, mjones@lytlesoule.com

- Ryan S. Wilson
  RWilson@hartzoglaw.com, acox@hartzoglaw.com, dcecrle@hartzoglaw.com

- Drew Neville, Jr.
  dneville@hartzoglaw.com, gbrown@hartzoglaw.com

- Alyson M. Weiss
  aweiss@loeb.com

- Jodi R. Sarowitz
  jsarowitz@loeb.com

  The following non-ECF registered attorneys were served by U.S. Mail:

  Samuel H. Rudman
  David A. Rosenfeld
  Robbins Geller Rudman & Dowd LLP
  58 S. Service Road – Suite 200
  Melville, NY 11747

Mary Katherine Blasy
Scott & Scott LLP
707 Broadway, Suite 1000
San Diego, CA 92101
Randi Dawn Bandman
Robbins Geller Rudman & Dowd LLP
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432

Jack G. Fruchter
Abraham, Fruchter & Twersky, LLP
One Penn Plaza, Suite 2805
New York, NY 10119

*/s/ Christin J. Hill*_____