UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED FOOD AND COMMERCIAL WORKERS UNION, Individually and On Behalf of All Others Similarly Situated, | ) ) ) ) | No. 5:09-cv-01114-D |
| Plaintiff, | ) ) | CLASS ACTION |
| vs. | ) ) ) | LEAD PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL COMPLIANCE WITH THE COURT'S JANUARY 6, 2012 ORDER AND PRODUCTION OF DOCUMENTS WITHHELD ON IMPROPER ASSERTIONS OF PRIVILEGE |
| CHESAPEAKE ENERGY CORPORATION, et al., | ) ) ) ) | |
| Defendants. | ) ) ) | |

706409_1

## I.    INTRODUCTION

With their Opposition ("Opposition" or "Opp."), defendants provide no counter to, and in fact substantially concede, the arguments in Lead Plaintiff's Motion to Compel ("Motion" or "Mot."). McClendon does not contest that he has withheld relevant documents and information ordered produced. Rather, he reasserts foregone arguments and criticizes the Court's Order. Similarly, defendants concede that raising reliance on counsel to support a defense puts that reliance at issue, and waives attorney-client privilege. However, defendants ignore that they have indeed raised such reliance here. Without more, defendants provide no basis for their continuing failure to comply with the Court's order and their discovery obligations. Lead Plaintiff's Motion should be granted in full.

## II.   ARGUMENT

### A.    McClendon Does Not Justify His Failure to Produce as Ordered

In the opening brief, Lead Plaintiff detailed McClendon's failure to produce as ordered by the Court. Mot. at 6-11. Lead Plaintiff also detailed how McClendon's failure runs contrary to the Federal Rules and well-established precedent. *Id*. McClendon provides no counter, and instead attempts to shift the Court's focus by sidestepping the substance of Lead Plaintiff's Motion. *See* Opp. at 5-11. Indeed, he concedes as much by pointing to the "spirit" of the Court's Order while ignoring its express holdings. *See, e.g.*, Opp. at 6-8.

McClendon's tact only highlights the conclusive issues he does not contest. McClendon does not contest the fact that, despite the Court's Order compelling him to do so, he has failed to produce all "bank, brokerage, or other financial account statements" as well as all "financial statements identifying [his] assets, liabilities, or income" as of July 9, 2008.

Further, McClendon concedes that the information sought by Interrogatories 1(h), (k) and 2 relate directly to the documents ordered produced, and "that 'discovery may be had regarding [those] documents.'"  Opp. at 10.  These concessions leave the substance of the Motion unopposed and the deficiency of McClendon's production beyond dispute.  Lead Plaintiff's Motion should therefore be granted.

### 1.    McClendon Should be Compelled to Produce All Documents as Ordered Without Improper Redaction

McClendon provides no legitimate justification for his almost complete redaction of relevant documents.  He does not contest that the documents and information Lead Plaintiff seeks here were already ordered relevant and to be produced.  *Cf.* Opp. at 3.  Nor does he contest that it was the documents themselves that were ordered produced - in full, without redaction, and with no limitation to any subset categories of information within those documents and certainly not those that defendants redacted.[1]  *Cf.* Opp. at 3.  Further, McClendon concedes that the Court already accommodated the very privacy concerns he rehashes here.  Opp. at 7, 8.  These concessions alone warrant unredacted production.

Notwithstanding, McClendon baldly asserts that the "heightened protection under the Court's Order and Protective Order is not adequate."  Opp. at 8.  Not only does this argument improperly question the Court's reasoning and authority, but it reasserts concerns the Court already addressed.  And McClendon fails to explain why the redacted information deserves treatment different than the unredacted information.

---

[1]    Defendants repeatedly refer to categories of documents not at issue here.  *See* Opp. at 3, 4, 6.  Those categories of documents have no bearing on the present motion.

McClendon asserts Lead Plaintiff's use of the documents "will be damaging to Mr. McClendon."  Opp. at 8.  But no explanation is provided as to how that could be or why even more information should be shielded from discovery.  Further, McClendon fully briefed his concerns prior to the Court's Order.  Dkt. Nos. 128, 133, 138.  Notwithstanding, he continues to ignore and contradict the broad endorsement of protective orders across this Circuit.  *See, e.g.*, *Mid Continent Cabinetry, Inc. v. George Koch Sons, Inc.*, 130 F.R.D. 149, 152 (D. Kan. 1990) (a party's "interest in nondisclosure and confidentiality of its financial records . . . can be adequately protected by a protective order").  Even the support he relies upon endorses this practice.  Opp. at 9-10 (citing *Hoagland v. Rockin' R Ranch & Lodge Guest Operations, Inc.*, Case No. 2:10-cv-478-TC-PMW, 2011 U.S. Dist. LEXIS 48472, at *5-*6 (D. Utah May 5, 2011) (identifying protective orders as effective protection for confidential information)).

McClendon further fails to explain his lack of confidence in the Court's capacity to enforce its protective orders.  Rather, he simply raises (again) the specter of media access despite the protective order and the heightened protection afforded by the January 6 Order.  Opp. at 8.  More still, McClendon's concerns are premature.  Any attempt by third parties to overcome the protection of this Court's orders would necessarily require notice to the parties, an opportunity for defendants to contest such dissemination, and, ultimately, a ruling by the Court.

The cases McClendon cites in support provide none.  Opp. at 9.  Each is plainly inapposite, as they concern redaction in the absence of a court order finding relevance and

compelling production.[2]   They have no bearing here where McClendon has redacted for relevance in the face of an order compelling production.  Further, these cases are outlying and non-controlling.  *Cf. HR Tech., Inc. v. Imura Int'l U.S.A., Inc.*, No. 08-2220-JWL, 2010 WL 4792388, at *5-*6 (D. Kan. Nov. 17, 2010) ("the duty to 'produce documents as they are kept in the usual course of business' includes the substantive contents of those documents").  Indeed, the lone case McClendon cites from within the Tenth Circuit merely recognizes a stipulation by the parties to redact.  *See* Opp. at 9-10 (citing *Hoagland*, 2011 U.S. Dist. LEXIS 48472, at *5-*6).  There is no such stipulation here nor did McClendon seek one.  And defendants' citations do not refute the tide of opinion referenced in Lead Plaintiff's opening brief.  *See* Mot. at 7-9.[3]

        Notwithstanding McClendon's failure to comply, his purported reason for redacting – that the information is "**not necessary to show Mr. McClendon's financial position as of July 9, 2008**" – lacks any merit.  Opp. at 4 (emphasis in original); *see also* Opp. at 6.  After redactions, the account statements produced by McClendon reflect beginning and end balances for the month of July (save one that reflects a balance on July 9, 2008).  Thus, there

---

[2]        *Spano v. The Boeing Co.*, No. 3:06-cv-743-DRH-DGW, 2008 WL 1774460, at *2 (S.D. Ill. Apr. 16, 2008) (redaction in the absence of a court order compelling production); *Beauchem v. Rockford Prods. Corp.*, No. 01 C 50134, 2002 WL 1870050, at *2 (N.D. Ill. Aug. 13, 2002) (same); *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 726 F.2d 1150, 1160 (7th Cir. 1984) (same), *rev'd on other grounds*, 470 U.S. 373 (1985).

[3]        McClendon mischaracterizes Lead Plaintiff's discovery practice.  Opp. at 10.  Unlike McClendon's financial information, the redacted portion of Lead Plaintiff's documents are not a central issue in this action.  And, the Court has not ordered Lead Plaintiff to produce that redacted information.  In any event, when requested by defendants, Lead Plaintiff produced documents that had previously been redacted.

is nearly no indication of McClendon's financial position as of July 9, 2008.  This is in addition to the fact that McClendon failed to produce any account statements for June – only nine days prior to the offering.  Without specificity (*e.g.*, account activity and specific investment activity), McClendon's ability to satisfy margin calls as of the Offering is indiscernable.

Further, defendants' affirmative defenses require understanding of the nature and type of McClendon's financial assets, *i.e.*, the liquidity of these assets.  For example, McClendon asserts that, between July 9, 2008 and October 8, 2008 (the first day of the margin calls), cash and cash equivalents were not the only means by which he could satisfy margin loans, and that he could have attempted to sell assets or obtain additional financing to cover the margin calls.  Declaration of Francis A. DiGiacco in Support of Motion ("DiGiacco Decl."), Ex. 1.  To respond and examine the validity of this assertion, information should be produced concerning the assets he relies upon.  Accordingly, McClendon's redactions, independent of the January 6 Order, violate his discovery obligations under Rule 26 to produce information that he concedes is relevant to the parties' claims and defenses.

### 2.    Discovery May Be Had on the Documents Ordered Produced

Just as McClendon's failure to comply with the Court's Order is plainly unjustified, so is his refusal to respond to discovery regarding those documents.  Opp. at 10-11.  As ordered, "discovery may be had regarding documents covered by Request No. 2, subparts (a)

and (d)." January 6, 2012 Order. Interrogatories Nos. 1, (h) and (k), and 2 concern documents covered by Request No. 2 (a) and (d). Defendants concede this. Opp. at 11.[4]

Yet, McClendon argues that the Order was "comprehensive" and thus that any discovery request not afforded a specific subsection in the Order must have been implicitly rejected. Opp. at 10. This reasoning conflates a failure to cite with a failure to consider, and runs counter to well-settled notions of judicial discretion. *See, e.g.*, *Hartman v. Nicholson*, 483 F.3d 1311, 1315 (Fed. Cir. 2007) ("'That the court did not specifically mention the [argument] in its opinion forms no basis for an assumption that it did not consider [it] . . . .'"). Moreover, the Court's Order makes no mention of redacting information yet defendants found no issue doing so. McClendon provides no justification for his deficient response.

## B. Defendants Provide No Support for Their Improper Assertions of Privilege

Defendants do not dispute that lack of waiver is an element of attorney-client privilege that they bear the burden of establishing before privilege can attach. Further, defendants fail to point to any specific showing that might support lack of waiver. Rather, defendants baldly assert that any privilege log of any quality necessarily suffices. Nonsense.

---

[4] Defendants read the Court's Order as a complete prohibition on discovery regarding documents covered by Request No. 2, subparts (a) and (d) as demonstrated by McClendon's response to Lead Plaintiff's other requests. DiGiacco Decl. Ex. 2 ("Mr. McClendon objects to this request on the grounds that it expressly violates the Court's January 6, 2012 Order"). Their misinterpretation is also shown in their interference with Lead Plaintiff's subpoena *duces tecum* to Goldman Sachs. Opp. at 11 n.2. Lead Plaintiff seeks information concerning McClendon's transactions in Chesapeake and natural gas that increased in value as the prices of each decreased. This information relates directly to the claims and defenses in this action, including materiality. Defendants' interpretation of the Court's Order as a foreclosure on any discovery of this nature is without basis.

As defendants' own cited authority makes plain (Opp. at 12): "The party asserting the privilege bears the burden of establishing its existence . . . .  Accordingly, the asserting party 'must "describe in detail" the documents or information sought to be protected and provide "precise reasons" for the objection to discovery and . . . must provide sufficient information to enable the court to determine whether each element of the asserted objection is satisfied; a "blanket claim" as to the applicability of the privilege does not satisfy the burden of proof.'" *Metzger v. Am. Fid. Assurance Co.*, No. CIV-05-1387-M, 2007 WL 3274922, at \*1 (W.D. Okla. Oct. 23, 2007).

Here, despite having been submitted, revised, submitted, and revised again, defendants' privilege log still makes no showing as to lack of waiver, and certainly fails to provide precise reasons establishing lack of waiver. Hall Decl Exs. 6, 7, 8 [Doc. No. 223]. Opp. at 4, 13.  This notwithstanding Lead Plaintiff's every effort, including identification of deficiencies and months of meet and confer.  *See* Hall Decl., Ex. 7.  Thus, as they have failed to establish an essential element thereof, defendants have failed to establish attorney-client privilege as to the documents they continue to withhold.  *New Jersey v. Sprint Corp.*, 258 F.R.D. 421, 426 (D. Kan. 2009).

Moreover, defendants' argument misses the point. Opp. at 11-16.  Defendants' brief focuses exclusively on whether and to what effect they have pled "the reliance on advice of counsel defense."  *Id*.  But waiver of attorney-client privilege does not depend on whether any particular claim or defense is asserted, nor whether reliance on counsel is a technical element thereof.  *Sprint*, 258 F.R.D. at 429 ("a defendant need not formally assert a reliance on counsel defense to waive the attorney-client privilege").  Rather, waiver is effected where

- 7 -

reliance on advice of counsel is affirmatively put at issue by the party asserting privilege. Asserting such reliance during discovery, constitutes affirmatively putting it at issue. Consequently, as defendants concede, "a party may not affirmatively put at issue the advice of counsel to prove an element of its defense while at the same time relying on the protections of the privilege to shield those communications from discovery." Opp. at 16 n.4.

Thus, whether defendants have or have not pled reliance on the advice of counsel as a separate defense is inconsequential. The question is whether defendants have asserted such reliance in support of a defense, and they have. Defendants have affirmatively put forth and expressly intend to rely upon advice of counsel in support of their due diligence affirmative defenses.[5] Mot. at 14-15; *see also, e.g.*, Hall Decl., Ex. 9 at 20-22 (stating in support of his due diligence defense that "McClendon relied in good faith on . . . legal advice [provided] in connection with the prospectus and Offering"). Moreover, they concede that asserting such reliance in response to discovery constitutes an "affirmative step to put in issue privileged communications with counsel." Opp. at 15. Having asserted reliance in support of a defense, defendants cannot now use attorney-client privilege to shield related communications. *See, e.g., In re CFS-Related Sec. Fraud Litig.*, 223 F.R.D. 631, 636 (N.D.

---

[5]     It is long-established that reliance on counsel factors into due diligence defenses. *See Feit v. Leasco Data Processing Equip. Corp.*, 332 F. Supp. 544, 582-83 (E.D.N.Y. 1971) (factoring reliance on counsel into due diligence defense); *Gould v. Am. Hawaiian S.S. Co.*, 351 F. Supp. 853, 868 n.20 (D. Del. 1972) (due diligence standard "obviously" embodies "whether a director . . . received and relied on assurances from counsel"); Bevis Longstreth, *Reliance on Advice of Counsel as a Defense to Securities Law Violations*, 37 Bus. Law. 1185 (Apr. 1982) ("reliance on advice of counsel may be an important factor in the due diligence defense for directors and underwriters under section 11(b) of the 1933 Act [and] in the due care defense under section 12(2) of the 1933 Act").

Okla. 2004) ("attorney-client privilege . . . 'waived [by] . . . put[ing] the protected information at issue'").  Nor may defendants salvage privilege by recanting their discovery responses.  *Evello Invs. N.V. v. Printed Media Servs., Inc.*, No. 94-2254-EEO, 1995 WL 135613, at *6 (D. Kan. Mar. 28, 1995) (once a party "claims that its reliance upon advice of counsel . . . that client has waived the protections afforded by the attorney-client privilege").  Defendants do not dispute the grounds for waiver identified by Lead Plaintiff, and thus the privilege has been waived, and the improperly withheld documents should be produced.[6]

## C.    Defendants' Press Releases and SEC Filings Are Not Privileged

With respect to draft press releases and SEC filings improperly withheld, defendants again miss the mark.  Opp. at 16-17.  It is not that the final versions of these documents were eventually made public, but rather that there has been no showing that the drafts themselves were intended to remain confidential.  Mot. at 15-17; *cf. SEC v. Roberts*, 254 F.R.D. 371, 379 n.6 (N.D. Cal. 2008).  Confidentiality is not presumed.  *In re Qwest Commc'ns Int'l*, 450 F.3d 1179, 1185 (10th Cir. 2006).   It is an element of attorney-client privilege that defendants bear the burden of establishing before privilege may attach, and defendants  have made no such showing.  *Id.*   Rather, the fact that these documents were included in

---

[6]     Defendants state that if asked "they would have made it crystal clear to Plaintiff that they have not and do not intend to assert any type of reliance on counsel defense in connection with their due diligence, nor do they intend to call any attorney witnesses to testify at trial or to introduce any attorney-client communications as evidence in the litigation or at trial."  Opp. at 15.  That is incorrect.  Further, following the Opposition, Lead Plaintiff requested defendants withdraw their Tenth Affirmative Defense insofar as it purports to assert any defendant relied on the information, opinions, reports or statements of lawyers.  DiGiacco Decl., Ex. 3.  Defendants refused.  *Id.*, Ex. 4.

documents intended to be made public strongly suggests a lack of intention of confidentiality. *Wilcoxon v. United States*, 231 F.2d 384, 386 (10th Cir. 1956) ("[T]he fact that a communication is made to an attorney does not . . . make it privileged. In order to be privileged, a communication must be made in confidence . . . and under circumstances from which it may reasonably be presumed that it will remain in confidence."); *In re 3 Com Corp. Sec. Litig.*, No. C-89-20480 WAI (PVT), 1992 U.S. Dist. LEXIS 22646, at *2-*3 (N.D. Cal. Dec. 10, 1992) ("because [draft press releases] were intended for publication, there was a lack of intent to maintain confidentiality, a requirement of privilege").[7] As defendants have made no showing to the contrary, intention of confidentiality has not been established and privilege cannot attach. Thus, these nonprivileged, relevant documents should be produced.

## III.   CONCLUSION

Lead Plaintiff respectfully requests that the Court grant its Motion.

DATED:  May 4, 2012                              Respectfully submitted,

                                                 _____
                                                 s/ FRANCIS A. DIGIACCO
                                                 FRANCIS A. DIGIACCO

---

[7]     The cases defendants cite are inapposite. Opp. at 16-17. Each concerns whether subsequent public disclosure of final versions waives privilege as to prior drafts to which privilege had properly attached. *See, e.g.*, *Herd ex rel. Herd v. Asarco Inc.*, No. 01-CV-891-H(M), 2002 WL 34584902 (N.D. Okla. Apr. 26, 2002) (intention of confidentiality established as to each draft, thus subsequent disclosure of final drafts did not waive privilege). Here, no showing of intent has been made that would establish privilege and thus subsequent disclosure is beside the point. *Natta v. Hogan*, 392 F.2d 686 (10th Cir. 1968), does not even concern drafts of publicly disclosed documents. 392 F.2d 686 (10th Cir. 1968) at 692. It dealt solely with documents given to in house lawyers so that entirely different documents could be created and submitted along with a patent application, which application might eventually be made public. *Id.*

ROBBINS GELLER RUDMAN
  & DOWD LLP
JAMES I. JACONETTE
JASON A. FORGE
FRANCIS A. DIGIACCO
DAVID W. HALL
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
RANDI D. BANDMAN
52 Duane Street, 7th Floor
New York, NY  10007
Telephone:  212/693-1058
212/693-7423 (fax)

Lead Counsel for Plaintiff

LYTLE, SOULÉ & CURLEE, P.C.
MICHAEL C. FELTY
MICHAEL A. BETTS
119 North Robinson, Suite 1200
Oklahoma City, OK  73102
Telephone:  405/235-7471
405/232-3852 (fax)

Local Counsel

- 11 -

SCHWARZWALD McNAIR & FUSCO LLP
EBEN O. McNAIR IV
616 Penton Media Building
1300 East Ninth Street
Cleveland, OH  44114-1503
Telephone:  216/566-1600
216/566-1814 (fax)

Additional Counsel for Plaintiff

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 4, 2012, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on May 4, 2012.

s/ FRANCIS A. DIGIACCO

FRANCIS A. DIGIACCO

ROBBINS GELLER RUDMAN
    & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:   FDiGiacco@rgrdlaw.com

# Mailing Information for a Case 5:09-cv-01114-D

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Hissan Ahsan Bajwa**
  hissanbajwa@paulhastings.com

- **Lily I Becker**
  lbecker@orrick.com,rrivera@orrick.com,gjohnson@orrick.com

- **Michael A Betts**
  betts@lytlesoule.com,mjones@lytlesoule.com

- **Francis A DiGiacco**
  fdigiacco@rgrdlaw.com

- **Michael C Felty**
  felty@lytlesoule.com,weis@lytlesoule.com,fisher@lytlesoule.com

- **E Joseph Giometti**
  jgiometti@orrick.com

- **David W Hall**
  dhall@rgrdlaw.com

- **Kenneth P Herzinger**
  kherzinger@orrick.com

- **Christin J Hill**
  chill@orrick.com,rquiban@orrick.com

- **James I Jaconette**
  jamesj@rgrdlaw.com,karenc@rgrdlaw.com,dhall@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **David S Keenan**
  dkeenan@orrick.com

- **Drew Neville , Jr**
  dneville@hartzoglaw.com,gbrown@hartzoglaw.com

- **Reagan Therese Roth**
  reaganroth@paulhastings.com

- **Jodi R Sarowitz**
  jsarowitz@loeb.com,tcummins@loeb.com

- **M Todd Scott**

tscott@orrick.com,elee@orrick.com

- **Jonathan N Strauss**
  jstrauss@loeb.com,tcummins@loeb.com

- **Robert P Varian**
  rvarian@orrick.com,bclarke@orrick.com

- **James R Webb**
  jim.webb@mcafeetaft.com,karen.hill@mcafeetaft.com,dianna.peters@mcafeetaft.com

- **Alyson M Weiss**
  aweiss@loeb.com,tcummins@loeb.com

- **Ryan S Wilson**
  RWilson@hartzoglaw.com,dcecrle@hartzoglaw.com,acox@hartzoglaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**Randi Dawn Bandman**
,

**Mary Katherine Blasy**
,

**Jack Gerald Fruchter**
,

**Christopher J Keller**
,

**Mark Peter Kindall**
,

**David Avi Rosenfeld**
,

**Samuel Howard Rudman**
,

**Barry G Sher**
,