## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

UNITED FOOD AND COMMERCIAL          )
  WORKERS UNION, et al.,           )
                                   )
        Plaintiff,                    )
                                     )
vs.                                 )      No. CIV-09-1114-D
                                     )      Class Action
CHESAPEAKE ENERGY CORPORATION,      )
  et al.,                           )
                                     )
        Defendants.                   )

## ORDER

Before the Court is the Lead Plaintiff's Motion to Compel [Doc. No. 222] Defendants to comply with the Court's January 6, 2012 Order [Doc. No. 167] ("January 6 Order") which granted in part and denied in part Lead Plaintiff's earlier motion to compel. Lead Plaintiff contends that Defendant Aubrey McClendon ("McClendon") failed to comply with the January 6 Order by redacting substantial portions of documents he was required to produce as a result of the Court's ruling. Lead Plaintiff also asks the Court to compel McClendon to answer Interrogatory Nos. 1(h) and (k) and Interrogatory No. 2, contending the January 6 Order requires him to do so. Lead Plaintiff also seeks to compel Defendants Chesapeake Energy Corporation, McClendon, Marcus C. Rowland, Michael A. Johnson, Richard K. Davidson, Frank A. Keating, Breene M. Kerr, Charles T. Maxwell, Merrill A. Miller, Jr., Donald L. Nickles, and Frederick B. Whittemore (collectively, the "Chesapeake Defendants") to produce certain documents which they contend are protected from discovery by the attorney-client privilege. McClendon and the Chesapeake Defendants timely responded to the motion, and Lead Plaintiff filed a reply.

By Order of April 9, 2012 [Doc. No. 228], the Court granted Defendants' request to submit for the Court's *in camera* review both unredacted and redacted copies of the documents produced

by McClendon.  The parties timely complied.

Having reviewed the January 6 Order and having examined *in camera* the documents at issue, the Court finds that no further hearing or briefing is required to resolve this issue or the other contentions raised by Lead Plaintiff's current motion.  Accordingly, the Court orders as follows with respect to Lead Plaintiff's motion.

I. McClendon's production of documents and propriety of redactions:

In the January 6 Order, the Court addressed Lead Plaintiff's Request for Production of Documents No. 2, which sought documents reflecting Defendant McClendon's personal financial information as of July 9, 2008.  Defendant McClendon initially objected to producing certain requested material on the grounds that it was not relevant and/or that it sought private and sensitive confidential information.   In its Order, the Court concluded that Lead Plaintiff's request was excessive in its scope, and limited the documents to be produced by McClendon.  January 6 Order at p. 8.  Specifically, the Court directed that Defendant McClendon produce documents responsive only to Request No. 2 (a) and (d), and denied Lead Plaintiff's motion as to the remaining subparts of Request No. 2.

Request No. 2 seeks production by McClendon of documents and communications "concerning your liquidity or financial ability, as of July 9, 2008, to satisfy the margin calls that resulted in the sale of substantially all of your shares of Chesapeake stock," and then lists eight categories, identified as subparts (a) through (h).  In the Order, the Court granted the motion only as to two of those categories, subparts (a) and (d), which request production of: "(a) bank, brokerage, or other financial account statements," and "(d) financial statements identifying your assets, liabilities, or income."  The motion was denied as to the other subparts of Request No. 2.

Lead Plaintiff contends that, although McClendon produced documents consisting of a July 31, 2008 financial statement and numerous bank, brokerage or other financial account statements, he has substantially redacted information from these documents.  Lead Plaintiff contends the redactions are improper because they reflect his determination of what he believes is relevant and within the scope of permissible discovery pursuant to Fed. R. Civ. P. 26.  Lead Plaintiff argues that McClendon may not unilaterally determine relevance for discovery purposes, and only the Court can make that determination.  In response, McClendon argues that the redacted material consists only of information which is not responsive to Document Request No. 2(a) and (d) or is within the categories of requested documents which the Court's January 6 Order ruled were beyond the scope of discovery.

The documents produced by Defendant McClendon in response reflect that he produced a July 31, 2008 "Statement of Financial Condition" which is responsive to subpart (d).  This consists of Bates Stamp Nos. 159508 -159512.   The balance of the more than 400 pages of produced documents reflect various bank, brokerage and other financial account statements, as requested in Document Request No. 2(a).  The Court has reviewed these documents in detail, and finds that, with a few exceptions, the redacted information is properly excluded because it is either outside the time frame contemplated by the express request, or it reflects information which falls into subparts (b), (c), (e), (f), (g), and (h) of Request No. 2.  In the January 6 Order, the Court expressly denied Lead Plaintiff's motion to compel production of documents in those categories.

With respect to the July 31, 2008 financial statement, Defendant McClendon has properly redacted information related to his financial condition in other time periods, including March of 2008 and June of 2007.  These time periods are outside the scope of the document request.

Defendant McClendon has also redacted information regarding personal non-liquid assets as well as others in which he has an interest.  The financial statement places a dollar value on such assets, but that information cannot reasonably be construed as reflecting his "liquidity or financial ability, as of July 9, 2008," to satisfy margin calls.  Furthermore, a substantial part of the redacted information falls within the subparts of Document Request No. 2 which the Court previously found too broad and beyond the scope of permissible discovery.  Accordingly, that information is properly redacted.  With respect to McClendon's liabilities, the same conclusions render the redacted information either unresponsive to the document request or beyond the scope of the January 6 Order.  The Court finds that such redactions are proper and consistent with the January 6 Order.

The balance of the documents produced reflect brokerage and/or bank account statements which are responsive to Document Request No. 2(a).  A substantial number of these statements contain no entries or information related to the July 9, 2008 date which is identified in the document request.  Instead, the majority of these account statements reflect only a beginning and ending balance for the month of July, 2008.  A review of the unredacted statements establishes that McClendon did not redact information which could reasonably be construed as demonstrating his liquidity or financial ability to satisfy margin calls as of July 9, 2008, which is the information sought in  Document Request No. 2(a).  The redactions of these documents are proper, as the redacted information is not responsive to the document request.

However, there are some portions of other bank or brokerage account statements which specifically identify cash transactions immediately prior to or after July 9, 2008.  Although these transactions may not clearly reflect McClendon's liquidity on July 9, 2008, it is possible that this information could lead to the discovery of admissible evidence, and it is thus arguably within the

scope of permissible discovery.  The Court therefore concludes that, with respect to certain pages of the redacted documents produced by McClendon, he should produce partially unredacted pages which reflect these entries.   The specific entries which fall into this category are identified by the following Bates stamp numbers reflected on the documents:

●Bates No. 159527: This page contains cash transfers to and from a Wachovia Securities Futures Account, and it reflects transfers on July 7, 2008 and several dates thereafter which appear to increase or decrease the amount of cash in the account.  The Court concludes that Defendant McClendon should produce a partially unredacted version of this page, to the extent the page reflects cash transfers from July 7, 2008 through July 9, 2008.  The remaining information shown on this account may remain redacted.

●Bates Nos. 159644, 159649, 159650: These pages reflect, in part, the "cash & short term" asset allocation in a J.P. Morgan Private Bank account.  The statement does not reflect transactions on specific dates, but includes only information reflecting the cash assets at July 1, 2008 and July 31, 2008. To the extent this reflects cash which may show Defendant McClendon's liquidity at the relevant date of July 9, 2008, these portions of the account statement are arguably subject to discovery and should be produced in an unredacted form showing only the cash portion.  The other information on these pages may remain redacted.

●Bates No. 159655: This page contains information regarding a Wells Fargo account, and contains a limited amount of information reflecting cash in the account as of July 31, 2008.  It also reflects cash income for the month of July, 2008.  While there are no transactions on or near July 9, 2008 or during the days immediately preceding and following that date, the current value and income summary for cash is arguably discoverable, and Defendant McClendon should produce an

unredacted copy showing this information on the page in question.  The remaining information on this page may remain redacted.

●Bates Nos. 159671-159673 and 159675-159676: These pages contain entries reflecting cash transfers or withdrawals in a Kirkpatrick Bank account.  Several entries appear on July 9, 2008 and during the days immediately preceding that date.  These entries are arguably responsive to the request for documents reflecting Defendant McClendon's liquidity on July 9, 2008. Accordingly, these pages should be partially unredacted to reflect transactions on July 9, 2008 and for the period of five days preceding July 9, 2008.  Other portions of these pages and the balance of the Kirkpatrick Bank statement shall remain redacted, as they contain no information within the scope of the document request.

●Bates Nos. 159693-159695: These pages are a portion of Defendant McClendon's statement of account with Banc of America Investment Services, Inc., and the total portfolio value was not redacted.  However, Defendant McClendon redacted from these two pages the "cash and cash equivalents" line showing a total for the July 2008 period, and that entry appears to be within the scope of the document request.  An unredacted copy reflecting these entries should be produced, and the balance of the information may remain redacted.

●Bates No. 159707: This page reflects a portion of a Citi commodity/futures account.  On this page, there are cash transaction entries on July 8 and July 9, 2008, and these have been redacted. The Court finds that these transactions should be reflected in a partially unredacted copy of the document page produced.

●Bates No. 159866: This page is a portion of an account statement with RBC Wealth Management.  Entries reflecting "cash and money market" values and the beginning and ending

balances for the same in July 2008 have been redacted.  Because this information arguably is relevant to the issue of liquidity on July 9, 2008, the Court finds a partially unredacted copy of this page, showing these cash values and the change in the same during July should be produced.

●Bates No. 159869: This page is also a portion of the RBC Wealth Management account, and reflects some cash deposits in July of 2008.  These have been redacted from the produced documents.  There is one entry on this page,  dated July 7, 2008, which reflects a cash deposit.  The Court finds that a copy of this page, including this entry, should be produced, but the remainder of the page may remain redacted.

●Bates No. 159878: This page reflects a separate account with RBC Wealth Management, and the statement also reflects an activity summary showing, in part, "cash/money market activity." These specific entries have been redacted.  To the extent this information could arguably show liquidity on the relevant date, a copy of this page, with these entries unredacted, should be produced. The balance of the page may remain redacted.

●Bates No. 159919: This page reflects a portion of a Wachovia Securities statement of account for July of 2008, and the page reflects some cash transfers to or from the account.  One entry reflects a date of July 7, 2008, and the Court finds it discoverable.  Accordingly, a copy of this page, with an unredacted line showing this transaction, should be produced.

●Bates No. 159923: This page also is a portion of the July, 2008 Wachovia Securities statement, and it appears to reflect a cash transaction on July 7.  The Court finds that this entry, which was redacted, is arguably within the scope of discovery.  Accordingly, a copy of this page, reflecting an unredacted line showing this entry, should be produced.  The remaining information need not be disclosed.

The Court has reviewed in detail the documents produced and has compared the redacted documents with those submitted for the Court's *in camera* review.  Having done so, the Court concludes that, with the exceptions noted above, Defendant McClendon has substantially complied with the Court's January 6, 2012 Order.  Accordingly, Lead Plaintiff's motion to compel his compliance is granted only as to the specific above-listed items.  Otherwise, the motion is denied.

II. McClendon's Answers to Interrogatory Nos. 1(h), 1(k), and Interrogatory No. 2:

Lead Plaintiff contends that, although the January 6 Order did not expressly address McClendon's responses to interrogatories, the ruling set forth therein addressed the objections to the discovery sought, and it requires McClendon to answer Interrogatory Nos. 1(h), 1(k), and 2. Lead Plaintiff correctly notes that the Court rejected the Chesapeake Defendants' objection to the interrogatories as premature, and contends that such ruling applies to the same objection asserted by McClendon.  In response, McClendon argues that some of  information sought by the interrogatories was determined by the Court to be overly broad and beyond the scope of discovery. With respect to other information, he contends his response to the document production requests constitutes an appropriate answer to the interrogatory.

A.  Interrogatory No. 1(h) and (k):

Interrogatory No. 1 asks McClendon to "identify all documents" concerning McClendon's purchases, sales, or holdings of Chesapeake securities in margin accounts or otherwise, and his "liquidity or financial ability as of July 9, 2008 to satisfy the margin calls that resulted in the sale of substantially all of your shares of Chesapeake stock, including, but not limited to, all documents" concerning 15 identified topics, listed as subparts (a) through (o) of the interrogatory.  In other words, this Interrogatory asks him to identify or list essentially the same documents which are

sought for production in Document Request No. 2.

Currently at issue in Lead Plaintiff's motion are subparts (h) and (k) of Interrogatory No. 1. Subpart (h) asks McClendon to identify documents reflecting "your bank, brokerage, or other financial account statements," and subpart (k) asks him to identify documents consisting of "financial statements identifying your assets, liabilities, or income." *See* Interrogatories submitted as Exhibit 2 to Declaration of David W. Hall [Doc. No. 223] in Support of Lead Plaintiff's current motion.

McClendon initially objected to Interrogatory No. 1, noting in part that it is duplicative of Lead Plaintiff's document requests. He also objected on privacy and relevancy grounds. These are essentially the same objections he asserted to Document Request No. 2, and these objections were addressed in the January 6 Order. Because the scope of Interrogatory No. 1 is essentially the same as Document Request No. 2, the January 6 Order limiting the scope of permissible discovery applies equally to the interrogatory and its subparts. Subparts (h) and (k) are substantially the same as subparts (a) and (d) of Document Request No. 2, and the Court's January 6 ruling requiring the production of responsive documents also applies to the Interrogatory requesting that McClendon "identify" those same categories of documents. The other subparts of Interrogatory No. 1 are beyond the scope of permissible discovery for the reasons set forth in the January 6 Order. To the extent Lead Plaintiff now seeks McClendon's response to those subparts, its motion is denied.

With respect to subparts (h) and (k) of Interrogatory No. 1, the Court held in the January 6 Order that the information sought therein is properly within the scope of discovery. As the Court concluded herein, *supra,* McClendon has substantially complied with the January 6 Order by producing responsive documents in redacted form. The documents produced identify the financial

statements, bank and brokerage statements, and related accounts sought by Interrogatory No. 1(h) and (k). However, McClendon did not provide a *list* of those materials in a written response to this interrogatory. Although it seems unnecessary for him to do so because the documents have been produced,[1] he should amend the interrogatory answer and provide a list of the documents responsive to Interrogatory No. 1(h) and (k).

B. Interrogatory No. 2:

In Lead Plaintiff's Interrogatory No. 2, McClendon is asked to provide the following information:

> For each document you identify in response to Interrogatory No. 1, state (i) whether it was provided to Chesapeake, (ii) if it was provided to Chesapeake, on what date it was provided, and (iii) if a date certain is not known as to when the document was provided to Chesapeake, state whether the document was provided to Chesapeake prior to the Offering.

Lead Plaintiff's Interrogatories, Exhibit 2 to Declaration of David W. Hall [Doc. No. 223]in Support of Lead Plaintiff's current motion. McClendon objected to this interrogatory, contending it is overly broad, unduly burdensome, and is not calculated to lead to the discovery of admissible evidence. He also objected on grounds that it is duplicative of document requests and that it seeks private and confidential information, as well as information protected by the attorney-client privilege and work-product doctrine.

Interrogatory No. 2 and McClendon's objection thereto were not expressly addressed in the January 6 Order or the hearing preceding that order. However, as Lead Plaintiff argues, this interrogatory asks only whether the documents McClendon produced were provided to Chesapeake

---

[1]Pursuant to Fed. R. Civ. P. 33(d), a party responding to interrogatories may produce documents which are responsive to the inquiry in lieu of providing a written answer. However, the Rule requires that the party provide a written description of the responsive documents.

and, if so, the date they were provided and/or whether the documents were provided prior to the July

Offering.

The Court finds that, to the extent McClendon has not previously answered Interrogatory No.

2, he should do so. The information sought therein is reasonably calculated to lead to the discovery

of evidence admissible at trial, as one of the issues involves the extent to which the Chesapeake

Defendants were aware of McClendon's financial liquidity at the time of the Offering.  McClendon

is directed to answer Interrogatory No. 2 within 14 days of the date of this Order.

III.  Documents withheld by the Chesapeake Defendants as subject to attorney-client privilege:

Lead Plaintiff also argues that the Chesapeake Defendants have improperly withheld from

production certain documents which the Chesapeake Defendants contend are protected by the

attorney-client privilege.  The Chesapeake Defendants produced a privilege log reflecting a

description of each document withheld, and it reflects that 1,839 documents[2] have been designated

as reflecting privileged communications.

Lead Plaintiff argues that these documents are not protected from discovery because the

Chesapeake Defendants have not provided sufficient information to satisfy their burden of showing

the documents are privileged.  Furthermore, Lead Plaintiff argues the Chesapeake Defendants have

waived the attorney-client privilege by asserting that they acted with due diligence in connection

with the Offering and disclosures and information contained therein.  Lead Plaintiff argues that,

because some of the Chesapeake Defendants stated that they sought and received the advice of

counsel regarding the content of the disclosures contained in the offering materials, they have

---

[2]This number is based on the privilege log submitted by the Chesapeake Defendants, which appears as Exhibit 7 to the David W. Hall Declaration [Doc. No. 223] in support of Lead Plaintiff's current motion.  Each document withheld on privilege grounds is identified by a number, and the last number listed is 1,839.  It is not clear whether each identifying number relates to a single page or whether the identifying number involves documents having multiple pages.

asserted a defense based on the advice of counsel and, as a result, have waived the attorney-client privilege.   Even if a waiver is not found on that basis, Lead Plaintiff argues that documents identified as drafts of filings with the Securities Exchange Commission ("SEC") and drafts of press releases related to the 2008 Offering are not protected by the attorney-client privilege because they are public filings or intended for public view.

In response, the Chesapeake Defendants argue they have provided information sufficient to satisfy their burden regarding assertion of the privilege.   They also contend that they have not waived the attorney-client privilege because, contrary to Lead Plaintiff's argument, their due diligence defense is not dependent upon the advice of counsel. Furthermore, they argue that drafts of SEC filings and press releases which reflect the legal advice of counsel are protected by the privilege.

A.  Adequacy of Chesapeake Defendants' assertion of the attorney-client privilege:

As the parties acknowledge, the attorney-client privilege "protects 'confidential communications by a client to an attorney made in order to obtain legal assistance' from the attorney in his or her capacity as a legal advisor." *United States v. Phelan*, 3 F. App'x 716, 718 (10th Cir. 2001) (unpublished opinion) (quoting *Matter of Grand Jury Subpoena Duces Tecum*, 697 F.2d 277, 278 (10th Cir.1983)).   "The privilege 'is intended to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice.'" *Id.* (quoting *Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998) (internal quotation omitted)).   "To be protected by the attorney-client privilege, a communication between a lawyer and client must relate to legal advice or strategy." *Phelan*, 3 F. App'x at 718 (citing *United States v. Johnston*, 146 F. 3d 785, 794 (10th Cir. 1998)).

As Lead Plaintiff argues, the party asserting the attorney-client privilege has the burden of establishing its applicability.  *F.D.I.C. v. United Pacific Ins. Co.*, 152 F.3d 1266, 1276 n.6 (10th Cir. 1998).  The party must bear the burden as to specific documents, and not by making a "blanket claim."  *In re Foster*, 188 F.3d 1259, 1264 (10th Cir. 1999).  Thus, the party must describe in detail the "documents or information sought to be protected."  *McCoo v. Denny's, Inc.,* 192 F.R.D. 675, 680 (D. Kan. 2000).  To satisfy that burden, the party must "provide sufficient information to enable the court to determine whether *each element*" of the privilege is satisfied. *Id.* (emphasis in original); *see also Lindley v. Life Investors Ins. Co. of America,* 267 F.R.D. 382, 389 (N.D. Okla. 2010).  The privilege applies "(1) [w]here legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except [where] the protection be waived." *McCoo*, 192 F.R.D. at 691 (citations omitted); *see also New Jersey v. Sprint Corp.,* 258 F.R.D. 421, 425 (D. Kan. 2009).

Rule 26 of the Federal Rules of Civil Procedure permits a party to withhold information from discovery on the grounds of privilege if the withholding party expressly asserts the privilege and, in doing so, it describes the "nature of the documents, communications, or tangible things not produced or disclosed...in a manner that, without revealing information itself privilege or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A).  Production of a sufficiently detailed privilege log satisfies this requirement. *Metzger v. American Fidelity Assurance Co.,* 2007 WL 3274922, at *1 (W.D. Okla. Oct. 23, 2007) (unpublished opinion); *Horton v. United States,* 204 F.R.D. 670, 673 (D. Colo. 2002).  There is no prescribed format for a privilege log.  *See* Fed. R. Civ. P. 26, advisory committee's note, subsection (b) (1993 Amendments).

13

In this case,  the privilege log submitted by the Chesapeake Defendants is very detailed. It describes each document for which the privilege is asserted, and identifies its date as well as its authors and recipients, and clearly identifies those who are attorneys. In addition, each document for which the privilege is asserted describes in general the content of the document and states that it solicits legal advice, provides legal advice, or contains notes or comments of counsel reflecting legal advice.  The privilege log also provides a description of each document sufficient to allow opposing counsel and the Court to understand the nature and purpose of the communication reflected therein.        The Court concludes that, contrary to Lead Plaintiff's suggestion, the Chesapeake Defendants have not asserted a blanket claim of privilege, but have provided a detailed assertion. The Court finds the privilege log prepared by the Chesapeake Defendants contains detail sufficient to satisfy the burden of showing the elements of the attorney-client privilege.  The detail with which the privilege log is presented does not, however, necessarily mean each document reflected thereon is subject to the attorney-client privilege.  The Court must first determine whether the privilege has been waived and, if not, whether its scope permits withholding the documents at issue.

B.  Waiver of the privilege:

As the parties agree, the attorney-client privilege may be waived under certain circumstances.

Among those circumstances is the reliance by a party on the advice of counsel as an element of his claim or defense in the litigation at issue.  To constitute such reliance, the party must attempt to disprove a claim, or support a defense, by relying on and offering evidence of legal advice.  *In re Lott,* 424 F. 3d 446, 454 (6th Cir. 2005); *Coregis Insurance Co. v. Law Offices of Carole F. Kafrissen, P.C.,* 57 F. App'x 58, 60, n. 3 (3d Cir. 2003) (unpublished opinion); *Lorenz v. Valley*

*Forge Ins. Co.,* 815 F.2d 1095, 1098 (7th Cir. 1987).  As Lead Plaintiff argues, the Tenth Circuit has acknowledged that courts have held reliance on counsel in such circumstances may constitute a waiver of the attorney-client privilege.  *Frontier Refinery, Inc. v. Gorman-Rupp Co.,* 136 F.3d 695, 700 (10th Cir. 1998) (discussing several circumstances in which waiver has been found, and noting that reliance on counsel has been held by some courts to constitute a waiver).

The Chesapeake Defendants argue that the waiver on which Lead Plaintiff relies is not present in this case because they have not asserted reliance on the advice of counsel as a defense, nor do they rely on evidence of otherwise privileged legal communications to support a defense. As they contend, their due diligence defense does not require that they rely on communications with counsel to demonstrate that they acted with due diligence in connection with the Offering.  Instead they must show that their actions, not those of counsel, demonstrate the reasonableness of their investigation.  *In re WorldCom, Inc. Securities Litigation,* 346 F. Supp. 2d 628, 662 ( S.D.N.Y. 2004).  As the court observed in *WorldCom,* "a defendant will not be liable upon a showing that he had *after reasonable investigation, reasonable ground to believe and did believe,* at the time such part of the registration statement became effective, *that the statements* therein *were true* and that there was no omission to state a material fact required to be stated therein necessary to make the statements not misleading."  *Id.* (citing 15 U. S. C. § 77k(b)(3)(A) (emphasis in original).

As the Chesapeake Defendants also note, there is a distinction in securities litigation between the due diligence defense and the reliance defense.  While the former does not require proof of reliance on counsel, the latter may do so, and it may, in some instances, lead to a waiver of the attorney-client privilege.  *See WorldCom*, 346 F. Supp. 2d at 663.   However, the Chesapeake Defendants argue that the affirmative defense set forth in their answer is not a reliance defense but

that it tracts the due diligence defense expressly set forth in 15 U.S.C. § 77k(b)(3)(A).  *See*

Chesapeake Defendants' Answer [Doc. No. 80], at page 14.  In contrast, the separate reliance on

counsel defense is set forth in 15 U.S.C. § 77k(b)(3)(C), and the Chesapeake Defendants expressly

state they do not rely on that defense in this case.

Having reviewed the parties' arguments and the Chesapeake Defendants' Answer and

affirmative defenses, the Court concludes that the Chesapeake Defendants have not asserted reliance

on counsel in a manner that has been recognized by courts as waiving the attorney-client privilege.

There is no indication that the Chesapeake Defendants intend to introduce evidence reflecting

otherwise privileged attorney-client communications to support their contention that they acted with

due diligence.  Nor is there a contention suggesting that the Chesapeake Defendants intend to argue

that their conduct was based on information or advice provided by legal counsel.  The Court finds

that, under the circumstances of this case, they have not waived the attorney-client privilege.

C.  Privilege communications regarding drafts of SEC filings and press releases:

As Lead Plaintiff notes, the Chesapeake Defendants' privilege log reflect that some of the

documents withheld as protected by the attorney-client privilege are drafts of materials ultimately

filed with the SEC and drafts of press releases issued on or about the date of the Offering.  Lead

Plaintiff contends that, because the SEC filings were ultimately publicly filed, they cannot qualify

as privileged and confidential communications.  Similarly, Lead Plaintiff argues a press release is

intended for public distribution and cannot, by its nature and purpose, constitute a confidential

communication between a client and its attorney.   In response, the Chesapeake Defendants point

out that, as the privilege log reflects, the foregoing drafts were communicated to their counsel for

the purpose of obtaining legal advice regarding their content.  Furthermore, the Chesapeake

Defendants note that the privilege log indicates these documents reflect notes and/or comments from their attorneys.

The parties have cited several court decisions addressing the application of the attorney-client privilege to publicly filed documents.  Lead Plaintiff argues that the authority compels a conclusion that the privilege does not apply to drafts of documents which, in whole or in part, are contained in documents ultimately filed with the SEC.  *See, e.g., Christman v. Brauvin Realty Advisors, Inc.,* 185 F.R.D. 251, 256-57 (N.D. Ill. 1999) (ordering production of drafts related to SEC forms and proxy statements); *SEC v. Roberts*, 254 F.R.D. 371, 379 n. 6 (N.D. Cal. 2008).    Lead Plaintiff also submits authority holding that draft press releases are not privileged because "a press release, by its very nature, is meant for the public eye and is not privileged."  *Freeport-McMoran Sulphur, LLC v. Mike Mullen Energy Equipment Resource, Inc.,* 2004 WL 1299042, at *8 (E.D. La. June 3, 2004) (unpublished opinion).

However, the Chesapeake Defendants also cite authority in which courts have held that attorney-client privilege and work-product protections can attach to drafts of documents, regardless of whether the final versions of the documents were later made public.  *See Roth v. Aon Corp.*, 254 F.R.D. 538, 541 (N.D. Ill. 2009) ("even when a final product is disclosed to the public, the underlying privilege attached to drafts of the final product remains intact"); *Holland v. Island Creek Corp.,* 885 F. Supp. 4, 8 (D. D.C. 1995) (drafts of final documents were privileged, except to the extent the draft was disclosed to third parties).  As the Chesapeake Defendants point out, the Northern District of Oklahoma has held a "request for discovery of all drafts of documents which were ultimately disclosed to the public in final form impinges on the attorney-client privilege. The drafting process is often the type of communication at the core of the attorney-client privilege. It

17

often involves deciding what positions to assert and what information should or should not be revealed along with the reasons for these decisions." *Herd ex rel. Herd v. Asarco Inc.,* 2002 WL 34584902, at *2 (N.D. Okla. April 26, 2002) (unpublished opinion).

The Court has closely reviewed the authorities, and finds they support the general rule that drafts of documents ultimately publicly filed or disseminated continue to be protected by the attorney-client privilege absent certain circumstances. First, the draft must have been prepared by the attorney or forwarded to the attorney with a request for legal advice concerning its content, or it must contain the attorney's notes and/or comments regarding its content. The fact that a copy of a document was distributed to the client's attorney, without a request for legal comment or advice and without responsive comments or notes made by the attorney, does not render it privileged. *See, e.g., Freeport-McMoran,* 2004 WL 1299042, at *6. However, as noted by the court in *Freeport-McMoran*, a draft of an SEC Form10-Q

sent to the client's attorney remains privileged where "it contains handwritten comments of [the attorney] relating to the inclusion of" certain information in the document, and the cover memorandum accompanying it "solicited the advice of" the attorney regarding its content. *Id.*

As the Chesapeake Defendants acknowledge, where a document prepared by an attorney at the request of his client is voluntarily disclosed to an adverse party, the privilege may be waived. *See In re Quest Communications International, Inc.,* 450 F.3d 1179, 1185 (10th Cir. 2006). In *Quest,* the company asserted the attorney-client privilege as to drafts of certain documents. The Tenth Circuit rejected its assertion because the attorney had produced the drafts to the Department of Justice and the SEC. *Id.,* at 1181-82. Preliminary drafts of documents which are ultimately revealed to third parties are not protected by the privilege. *Lindley v. Life Investors Ins. Co. of*

18

*America,* 267 F.R.D. 382, 386 (N.D. Okla. 2010).  However, the "privilege is waived only as to those portions of the preliminary drafts ultimately revealed to third parties."  *Id.*

Accordingly, the Court finds the attorney-client privilege remains applicable to drafts of documents which were prepared or reviewed by the attorney at the request of the client, documents submitted to the attorney with a request for legal advice regarding its content, or which contain notes or comments of the attorney regarding the document's content.  The Court finds no persuasive basis for excluding such documents from the protection of the attorney-client privilege on the basis that a final version of the document was publicly filed with the SEC or submitted to the press.  On the other hand, final versions of publicly disseminated documents which were distributed to the attorney as well as other corporate officers or employees, without soliciting legal advice or comment or approval, would not be privileged.

Based on the privilege log's detailed description of the documents for which the privilege is claimed by the Chesapeake Defendants, the Court finds the documents are properly withheld from production.  The description of each document includes a reference to its submission for the purpose of obtaining legal advice or comment and/or its receipt from the attorney, including references to documents including attorney notes or comments.   These documents satisfy the attorney-client privilege requirements. The Court thus generally finds these documents properly withheld as privileged.   There are, however, some entries in which the author or recipient is not clearly identified as an attorney, although the descriptions of such documents state that they reflect the comments of an attorney, and specifically identify the attorney who made those comments.

Nevertheless, with respect to this narrow sub-set of documents, the Court cannot determine the veracity of the Chesapeake Defendants' description of the withheld documents without

examining each such document for which a privilege is claimed.  Accordingly, to the extent Lead Plaintiff – after further consultation with opposing counsel – believes in good faith that such documents are not subject to the protection of the privilege, it may so notify the Court, specifically identifying the documents in question.  In that event, the Court will direct the Chesapeake Defendants to submit copies of the challenged documents so that the same may be reviewed *in camera.*

## IV. Conclusion:

For the foregoing reasons, Lead Plaintiff's motion [Doc. No. 222] is granted in part, denied in part, and reserved in part.  The motion is granted as to the documents identified by the Court herein as redacting certain information produced by McClendon in response to Document Request No. 2(a) and (d).  Defendant McClendon shall produce the partially unredacted pages identified by the Court and shall do so no later than July 13, 2012.  The motion is reserved to the extent Lead Plaintiff notifies the Court that a dispute remains as to certain documents for which the attorney-client privilege is asserted, as explained herein.  In all other respects, the motion is denied.

IT IS SO ORDERED this 22nd day of June, 2012.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE